ROMAN SILVERSMITHS, INC., Respondent, *v.* HAMPSHIRE SILVER Co., INC., et al., Appellants, and IRWIN FENTON, Intervenor, Appellant.

First Department, May 12, 1953.

*Charles Sonnenreich* for appellants.

*Frederick E. Weinberg* of counsel (*Stanley M. Estrow,* attorney), for respondent.

DORE, J.  In this action by plaintiff, manufacturer and vendor of silver plated hollow ware, against defendants, engaged in the same business, for an injunction, damages and an accounting on the ground of claimed unfair competition and fraudulent representations, defendants Hampshire Silver Co., Inc., Julius

Krantz, Lew Goldwyn and Irwin Fenton (the latter an intervenor) appeal from a judgment against them entered after trial at Special Term granting plaintiff an interlocutory decree (1) restraining defendants from soliciting any customers of plaintiff who were such prior to June 19, 1950, and from using any photograph portraying an article sold by plaintiff; and (2) directing an accounting before a private referee for profits and damages.

Plaintiff and the corporate defendant are wholesalers selling their products, popular price silver plated hollow ware, such as platters, pitchers, tea and coffee sets and similar items, throughout the United States to department stores, jewelry stores, retailers and jobbers.

In 1946 plaintiff was organized by defendants Julius Krantz and Goldwyn; both had been engaged in the same business as plaintiff for many years, and each became owner of 50% of plaintiff's stock. In 1947 plaintiff's present president, Lieberman, became associated with plaintiff as a sales representative. On November 16, 1948, with money advanced by Lieberman, Goldwyn bought from Krantz for $40,000 Krantz's 50% stock ownership in plaintiff. In January, 1949, Krantz organized defendant corporation and engaged in the manufacture and sale of the same line of merchandise as plaintiff. On June 19, 1950, Lieberman also bought out Goldwyn's stock for an additional $30,000. In July, 1950, Goldwyn became associated with defendant Hampshire Silver Co., Inc.

While defendant Goldwyn was still a stockholder of plaintiff, plaintiff started this suit against Hampshire and Krantz. In the course of the litigation, in May, 1949, a stipulation was made by the parties whereby defendants agreed not to make reproductions of plaintiff's photographs without plaintiff's consent and not to offer their products as plaintiff's products; it was also stipulated that whereas the then defendants alleged they were not using style numbers used by plaintiff but numbers consisting of four digits only, the last two of which were similar to plaintiff's numbers, defendants stipulated to use only such style numbers indicated by four digits; it was further agreed that if defendants violated any of the covenants therein made, plaintiff could apply to the court for an order; and prosecution of the action was suspended but could be renewed on five days' notice.

When Goldwyn sold out to Lieberman, those two made an agreement dated June 19, 1950, which provided *inter alia* that

Goldwyn, seller, might make an announcement to the trade of terminating his connection with plaintiff and of his new connection by advertisement in the trade press and notice by direct mail provided he inserted a separate notice as to his former connection and allowed ten days to intervene between the notice of his former connection and his new connection. It was also agreed that Goldwyn, as seller, should not be prohibited from manufacturing molds similar to those owned by Roman or from continuing to use any molds now in existence in any partnership or corporation that Goldwyn acquired an interest in '' even if the same are exact duplicates of '' Roman's molds. A clause with regard to the use of photographs or stock numbers of Roman expressly provided that the seller, Goldwyn, should not be precluded from continuing to use stock numbers or photographs now in use by any partnership or corporation in which he acquired an interest '' regardless of their similarity to Roman * * * stock numbers or photographs.''

In a comprehensive decision, the learned trial court held that there was nothing secret, exclusive or unique in plaintiff's methods or processes; that defendants had not copied any list of plaintiff's customers nor had they taken with them any of plaintiff's molds, dies or tools; that they had made no covenant not to engage in the same business in competition with plaintiff or not to use in such competition the knowledge they gained while with plaintiff; that it was defendants' clear legal right, and not in any way an invasion of any legal right of plaintiff, to engage in such business; and that they had necessarily taken with them the knowledge they had gained when associated with plaintiff. The court also held that there was no evidence that any article sold by plaintiff had become identified in the public mind as products exclusively of plaintiff; that plaintiff had failed to show any proprietary right with respect to the form of any article it sells; and that plaintiff was not entitled to any relief merely because defendant Hampshire sold at lower prices products similar to plaintiff's articles in size, shape, design and decorative detail. He further held that plaintiff had no proprietary right in particular numbers and that there is nothing unique or distinctive in the numbers used. With regard to eight of ten of plaintiff's employees who ceased their employment with plaintiff and became associated with Hampshire as soon as Hampshire started business, the court held that there was no evidence that the defendants had enticed such employees from plaintiff by any force, fraud, duress or misrepresentations; that

defendant Hampshire had merely represented that it was willing to employ them; and, as they left without breaching any contract with plaintiff, he held there was no actionable wrong, and that establishment in such respect of plaintiff's claim would stifle free enterprise and cancel out advantages gained by organized labor. He also said that the rule in *Beardsley* v. *Kilmer* (236 N. Y. 80, 90) rejects plaintiff's doctrine. That case held " that the genesis which will make a lawful act unlawful must be a malicious one *unmixed with any other and exclusively directed to injury* and damage of another " (italics ours) (see, also, *Amer. Bank & Trust Co.* v. *Federal Bank*, 256 U. S. 350, 358). Relying, however, on *Von Bremen* v. *MacMonnies* (200 N. Y. 41), the trial court enjoined defendants from soliciting business from customers of plaintiff.

With regard to the photographs, he ruled that as they were marked plainly with the name " Hampshire Silver Co., Inc." their use was not an attempt to palm off defendants' goods as plaintiff's; however, on the ground that the photographs initially used by defendants selling their products were duplicates of or made from photographs of plaintiff's products and actually portrayed articles sold by plaintiff, the court held that this was a case of " falsely " representing that defendant Hampshire had and was prepared to sell the identical articles which plaintiff sold; and, accordingly, he enjoined the use of any photograph portraying an article sold by plaintiff.

Plaintiff does not appeal from the judgment entered nor did it take any exception to any of the court's findings or conclusions or ask that any be reversed or in any way modified.

The record sufficiently establishes that the business in question involved no trade secrets or secret processes or secret lists of customers; those engaged in the same business obtained their materials from the same " stampers " or other sources and assembled them in accordance with general trade practices; the designs in question were standardized throughout the industry; the customers dealing in the product were generally known and their names were obtained from common printed trade lists published widely in the trade. Indeed in its amended complaint, plaintiff does not specifically ask any injunctive relief with regard to solicitation of plaintiff's customers.

In view of this state of facts and the trial court's almost complete exoneration of defendants from plaintiff's claims of unfair competition, and in the light of the stipulation and the Goldwyn agreement, we think there is no basis for prohibiting defendants

from soliciting " any person or business entity, who were customers of plaintiff ". Enforcement in this industry of that decretal might well put defendants out of business.

With respect to the injunction regarding the use of photographs, it was shown that in the regular course of this business, merchandise was sold by salesmen calling on the trade and exhibiting photographs of the silver plated pieces or mailing them to prospective customers. When Krantz severed his connection with plaintiff and engaged in the same business, he went to plaintiff's photographer and from the negatives had photographs made for his corporation. Krantz then added to the photographs the corporate defendant's name and at the outset used the same stock numbers plaintiff used; but, after protest, he added 1,300 to each stock number so that there would always be a stock number of four digits the last two of which were identical with plaintiff's stock numbers.

Defendants' action in going to the plaintiff's photographer and using plaintiff's negatives to produce the photographs and the original use of plaintiff's stock numbers, indicates that defendants were then at least attempting to compete unfairly. But defendants say they have completely desisted from using plaintiff's photographs and insist that they now use photographs made directly from their own plated silver products. The stipulation permitting the use of four digits would make it impossible to enjoin defendants from what they claim is their present practice. However, defendants should be enjoined from the use of plaintiff's photographs, or photographs from plaintiff's own negatives, and from the use of photographs of any products made only by plaintiff and not by defendants; but they should not be enjoined from the use of photographs made directly from products they themselves manufacture even though they are similar or substantially the same as plaintiff's products.

In December, 1950, plaintiff was permitted to amend its complaint by adding Goldwyn as a party defendant and adding a third cause of action against Goldwyn, Krantz and the corporate defendant; and moved for a preliminary injunction which was denied.

Plaintiff also in December, 1950, instituted an action against the intervenor-defendant Fenton in the Circuit Court of Cook County, Illinois, on substantially the same charges as the amended complaint herein. Thereafter in April, 1951, Fenton was permitted to intervene in this action; and in May, 1951, the Illinois action was stayed by an order of our Supreme Court

which this court unanimously affirmed. At this trial, the court refused to include defendant-intervenor Fenton in the injunctive portion of the interlocutory judgment but did not dismiss plaintiff's reply asking for dismissal of Fenton's answer and vacatur of the stay of the Illinois action. The trial court held that the stay of the Illinois action would necessarily end on determination of this action; and that, therefore, it was not called upon to make any ruling with respect to Fenton's pleading or as to what plaintiff can do in the Illinois action after determination of this action.

Defendant-intervenor Fenton, while he filed an answer and was represented by the same attorney as the other defendants, failed personally to be present at the trial to meet by his own testimony the charges made against him personally. But, as plaintiff takes no appeal from the judgment as entered, we have no issue on that aspect of the case presented to us on plaintiff's behalf. We think, however, the stay of the Illinois action should be expressly vacated, so that all issues between plaintiff and Fenton may be disposed of on the merits in that action.

What is true of all actions, is especially true in a suit for unfair competition: disposition of each case peculiarly depends upon the precise state of facts disclosed. The state of facts in this record including the stipulation herein and the reservations in Goldwyn's agreement were not present in the agreement covering the sale of partnership assets in *Von Bremen* v. *MacMonnies* (200 N. Y. 41, *supra*) relied on by the learned trial court and, accordingly, the rule in that case is not here controlling.

The trial court expressly found and the record sustains the finding, that no article of any particular size, shape or design ever became identified in the public mind as an article produced and sold only by plaintiff, and that plaintiff was not entitled to any relief merely because defendant Hampshire sells articles of like kind similar to plaintiff in size, design and decorative detail. We have stricken out the injunction regarding soliciting customers. For these reasons and because we think any effort to trace damages specifically to the restricted injunction regarding photographs would probably be speculative, we think the reference for an accounting should be stricken from the decree.

Accordingly, the judgment appealed from should be modified: (A) with regard to the injunctive provisions, (1) by striking out the injunction as to soliciting customers; (2) by modifying the provisions regarding photographs so as to enjoin defendants from the use only of (a) photographs made from plaintiff's negatives, or (b) photographs of plaintiff's photographs, or

(c) photographs of products made solely by plaintiff and not made by defendant Hampshire, Inc.; but not to enjoin defendants from using photographs made from products that are manufactured by defendant Hampshire, Inc., even though substantially similar to those made by plaintiff; (B) with regard to the Illinois action, by vacating the stay of plaintiff's action against Fenton in Illinois; and (C) with regard to the accounting by striking out the decretal directing a reference before a private referee for an accounting and damages; and, as so modified, the judgment appealed from should be affirmed, with costs to plaintiff-respondent against defendants-appellants.

PECK, P. J., GLENNON, VAN VOORHIS and BERGAN, JJ., concur.

Judgment unanimously modified in accordance with the opinion herein and, as so modified, affirmed, with costs to the plaintiff-respondent against the defendants-appellants. Settle order on notice. [See *post*, p. 684.]