Henry Epstein, J.
This is an action for injunctive relief seeking to bar defendants and affiliates from using the trade name 11 Bennetts ” in general consumer sales to the public. The *834 action was begun October 24, 1959, after unsuccessful efforts to dissuade defendants by letters under dates of September 22 and October 15, 1959. Temporary injunction was denied but an immediate trial ordered by Mr. Justice Cojstloit of this court. Issue was joined November 12,1959 and trial commenced in this court December 14,1959. Plaintiff is owned, directed and operated by members of the Bennett family and every stockholder, officer and directing executive is a member of the Bennett family bearing the name “ Bennett ”. For more than 50 years plaintiff and the Bennett family have conducted the business since .1909, having taken over a predecessor business. First it was “Bennett Manufacturing Co.”, then “Bennett Brothers”, a partnership, and since September 12, 1929 the name has been “Bennett Brothers, Inc.”, this plaintiff. Plaintiff sells consumer merchandise of all kinds, totaling* over 18,000 items covering everything but foodstuffs. It is a business established in the spirit of American enterprise.
In New York City plaintiff Bennett Brothers has over 90,000 square feet of warehouse and executive space, occupying some five floors at 435 Hudson Street; two showrooms at 175 Broad-, way and 485 Fifth Avenue. At the latter showrooms purchases may be made by customers over the counter for cash or by orders from employers on behalf of employee customers. In Chicago an Illinois corporation of like name has a showroom and warehouse of over five floors, 60,000 square feet at 30 East Adams Street, and in New York and Chicago each business of plaintiff employs over 300 employees. Beginning some 30 years ago plaintiff published a catalogue in a paper cover of some 100 pages. Today plaintiff’s catalogue, known as the “ Bennett Blue Book”, in a hard washable cover, comprises over 900 pages. In 1959 over 250,000 of these catalogues were distributed, some 125,000 in the eastern seaboard region and some 25,000 alone in the New York metropolitan region. In Nassau and Suffolk counties alone some 3,700 Blue Books were distributed among such employer firms as Borden Company, Republic Aviation, Metropolitan Life Insurance Company, Civil Aeronautics Administration, New York Telephone Company, Sperry-Rand Corporation, Liberty Mutual Insurance Company, Ridgewood Savings Bank, Receiver of Taxes of Town of Hempstead, and sundry other firms, banks and agencies on Long Island.
Of the 1960 Bennett Blue Book publication distributed (321,-000), one half has been distributed in the East. These books are for the employees’ use and supplementing the Blue Book over 400,000 circulars were sent out as promotional material under the name “ Bennett ”. Since 1955 plaintiff and the lili *835 nois corporation have spent over $3,000,000 in promotion, of which some $2,000,000 is able to be allocated to the New York region operations. The members of the Bennett family plan, compose and lay out the circulars, catalogues and advertising material.
The gross sales of plaintiff in the United States rose from $2,775,510 in 1945 to $17,828,171 in 1957; then declined to $16,-700,790 in 1958 and further to $15,932,587 .in 1959. The sales in the metropolitan area of New York City (including Long Island, Westchester, and nearby New Jersey communities) rose from $300,626 in 1945 to $1,981,111 in 1957 and declined in 1958 to $1,859,696 and further in 1959 to $1,752,476. This court does not conclude that the New York City area decline or the national decline is attributable to the defendants’ competition. But the court cannot blind itself to the fact that the march of peripheral neighborhood stores, shopping centers, and “ supermarkets ” like those of defendants here must constitute a threat to other forms of merchandising distributors, particularly mail-order houses and the like. Of course, the courts cannot undertake to block the march of honest competition and the natural avenues of large-scale appeal to consumer buying in suburban areas. The extent to which the courts may act in the arena of economic conflict is clearly marked, but must be exercised only where the facts warrant the imposing of a reasonable standard of ethics in the business world. At least we are warranted in preventing the conscious or unconscious appropriation of the good name of a well-established enterprise in a case ivhere no other sound reason exists and timely warning has been given.
Defendants here concede the excellence of plaintiff’s products, the good repute of plaintiff in selling first quality merchandise for some 60 years. “ A good name is better than great riches ” has been one of plaintiff’s slogans. Plaintiff has understandably been proud of its record in business. Its incorporation dates from 1929; defendant Floyd Bennett Farmers Market was incorporated August 2, 1956; defendant Valley Stream "Properties, Inc., incorporated March 19, 1959. No officer, director or stockholder of defendants is named Bennett. Yet defendants carry a cross reference in the telephone directory as “ Bennetts Discount Mart”, corresponding to the 11 Floyd Bennett Discount Mart ’ ’, etc. Plaintiffs have spent several million dollars in promoting the name “ Bennett ”. In 1959 plaintiff expended almost a half-million in promotion. Defendant Floyd Bennett Farmers Market Corporation spent in the year 1957-1958 some $74,000 promoting the name “ Floyd Bennett ”, and from 1958 to 1959 over a year period some $26,000 in combined radio and *836 newspaper advertising. Plaintiff sells to and depends on customers and their satisfaction. Defendants only lease space to tenants who sell, each a different variety of merchandise, collectively advertised by the landlord (defendants) as “ Bennetts
Defendants operate large retail establishments where the actual sales are made by tenant vendors. A host of articles sold in defendants’ places of business, both in Brooklyn and in Valley Stream, Long Island, are in the same categories as those sold by plaintiff, both by catalog and in its retail establishments. The fact that the quality is of a cheaper grade in most instances and the fact that some foodstuffs are also sold in defendants’ “ markets ” do not remove defendants from the area of protection that a sound jurisprudence should accord to the long-established business of plaintiff. The fact that many suppliers and customers were confused is amply proven. The change of the type of advertising, style, form and script in advertising and on customers’ bags also conduce to the belief that defendants have used plaintiff’s name, method and example. The claimed “ innocence ”, even if credited, cannot save defendants once they were warned and, as held here, in time within which to make the necessary changes. Consultation with able counsel is no defense, and action contrary to established legal principles cannot withhold the arm of equity from imposing the just result required by the facts.
The legal principles are well established by a host of cases, a few of which may be adequate: Albro Metal Prods. Corp. v. Alper (281 App. Div. 68); Tiffany & Co. v. Tiffany Prods (147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482); Forsythe Co. v. Forsythe Shoe Corp. (234 App. Div. 355, mod. 259 N. Y. 248); Miles Shoes of New York v. Niles Bootery (235 App. Div. 575); Long’s Hat Stores Corp. v. Long’s Clothes (224 App. Div. 497).
The Albro,case (supra) so far as to hold (p. 69): “ Although the parties may not be in competition, and we might even accept defendants’ statement that they did not know of plaintiff’s name and business at the time they adopted the name Albro, it is still sufficiently clear upon the facts that confusion is likely and that plaintiff is entitled to the protection of its name against the incursion of defendants
Thus the law has gone so far as to hold that even absent competition between the parties, one cannot adopt the name of another which may lead to confusing the purchasing public. (Hill’s Supermarkets v. Stony Brook Dairies, 7 A D 2d 756, where the court held on appeal that proof of actual confusion or *837 loss of business is not necessary, “ The likelihood thereof is sufficient ”.
Plaintiff and its predecessors have used the name“ Bennetts ” for over 50 years. Long and prior use with extensive advertising entitled plaintiff to protection from those who would copy its name for business purposes in a closely related and competitive field (Sullivan v. Sullivan Radio & T.V., 1 A D 2d 609; John B. Stetson Co. v. Stephen L. Stetson Co., 128 F. 2d 981; 133 F. 2d 129).
Plaintiff has established a superior and prior right to the name “ Bennetts ”. That others in the country, in other businesses, have used the name “ Bennett ” or “ Bennetts ” cannot protect these defendants under the overwhelming, credible proof presented herein (Peerless Elec. Co. v. Peerless Elec., 206 Misc. 965; Smiling Irishman v. McDonald, 183 Misc. 985).
These defendants cannot claim the right to the name “ Bennetts ” as a derivative of its business in Brooklyn near Floyd Bennett Field. For have defendants shown any basis on which to rest its claim to the name “ Bennett Stores Inc.”, the intermediate corporate entity; nor the right of the Valley Stream Properties, Inc., to use the name “ Bennetts ” in the face of the ample warning given before its opening for business (Higgins Co. v. Higgins Soap Co., 144 N. Y. 462-469; Rochester Sav. Bank v. Rochester Sav. & Loan Assn., 170 Misc. 983). The use of a “ small print ” disclaimer cannot save defendants. (New York World’s Fair 1939 v. World’s Fair News, 163 Misc. 661-666, affd. 256 App. Div. 373; 2 Nims, Unfair Competition and Trademarks [4th ed., 1947], § 379a, p. 1211.)
Defendants’ lessees who operate the retail businesses in the locations in question agree that each business “ shall be conducted in such a manner as to give the ostensible appearance of being a part of a single department store operated by landlord under landlord’s name or trade name ”. The landlord has “ no ownership or other right ’ ’ in the said business. Each tenant carries his own insurance, contributes his share of the collective advertising, maintains his own telephone. The sales are not the sales of defendants but those of each tenant. The grocery department operated by Dilbert’s Quality Supermarkets, Inc., is an exception. One or more such instances are also present in the Valley Stream operation. Defendants still maintain a dual name pretense: “ Bennetts ” as a medium of general advertising and the “ Floyd Bennett Discount Mart ” on its walls at a side space for parking at the Brooklyn operation.
Defendants’ advertising at first was clearly noncompetitive: “ Floyd Bennett Mart” in equal size capital letters appears *838 in its Il Progresso, Daily News, Daily Mirror and New York Post editions in September and October, 1957. By January, 1958 the only large word in such advertising was “ Bennett’s ” with a fading “ Floyd ” before; the “ Mart ” after. Then these were dropped entirely and “ Bennett’s ” became the sole word employed by September, 1958, and later coincident with the use of an identical form for the Valley Stream enterprise. The advertising of the Valley Stream “ Bennett’s ” came much closer to the actual lettering on plaintiff’s catalogues and circulars. There can be no doubt as to the unfair character of defendants’ use of the name. The cases cited in defendants’ brief are wholly consistent with this conclusion on the facts in this case. “ Every question of unfair competition presents issues of fact rather than those of law * * * each case stands upon its own facts.” (Boyshform Brassiere Co. v. Modishform Brassiere Co., 205 App. Div. 14, 16.) “ Courts of equity are empowered to restrain the use of names, marks and other devices, of whatever character, in various protected areas of activity, if their use is designed to deceive or will tend to confuse persons addressed ”. (Mele v. Ryder, 8 A D 2d 390, 393. Emphasis supplied.) “ The test is whether resemblance is calculated to produce confusion as to identity and consequent damage.” (Eastern Constr. Co. v. Eastern Eng. Corp., 246 N. Y. 459, 464.)
“ Reasonable probability of loss of business by the plaintiff which constitutes the ground for the intervention of a court of equity ” is the test. It was found “ wanting ” in the Eastern Constr. Co. case (246 N. Y. 459, 465, supra), but clearly is present on the facts in this case. ‘1 What is true of all actions, is especially true in a suit for unfair competition: disposition of each case peculiarly depends upon the precise state of facts disclosed.” (Roman Silversmiths v. Hampshire Silver Co., 282 App. Div. 21, 27, affd. 306 N. Y. 894.)
The instant case presents what comes close to being an ideal set of facts on which to base injunctive relief. Since there was no actual proof of dollar damages allocated to the areas where defendants conduct their enterprises, the judgment herein -will be confined to injunctive relief sought.
Judgment for plaintiff, with costs. Settle form of judgment on notice.