SMILING IRISHMAN, INC., et al., Plaintiffs, *v.* JOHN J. McDONALD, Doing Business under the Firm Name of HAPPY IRISHMAN, Defendant.

Supreme Court, Special Term, New York County, December 18, 1944.

*Charles Rosenberg* for plaintiffs.

*Philip Olan* for defendant.

GAVAGAN, J. This is an action for an injunction restraining the defendant from using the name " Happy Irishman " or any combination of such name or any name similar to that used by the plaintiffs in the conduct of their business, to wit: " Smiling Irishman."

The evidence established that the plaintiff, Leland Holzer, filed a certificate of doing business under the name and style of " Smiling Irishman "; that he caused the corporate plaintiff to be incorporated under the law of this State as " Smiling Irishman, Inc."; that he duly filed in the United States Patent Office a copyright of the name " Smiling Irishman " and subsequently procured the certificate. Plaintiffs originally conducted their business at 433 West 42nd Street, in the borough of Manhattan, city of New York, and admittedly employed the defendant for a period of time. After the termination of the employment the plaintiffs vacated the premises named above and located at another address. The defendant, some time between August 15th and September 1, 1944, moved into the vacated premises and commenced business under the name and style of " Happy Irishman." At the time of defendant's taking possession of the premises there were certain signs and symbols used by the plaintiff attached to the side of the building which this defendant took possession of and used in the same type of business conducted by the plaintiff, to wit: buying and selling used automobiles. The evidence indisputably established that the plaintiff expended large sums of money in advertising under the name and style of " Smiling Irishman "; that a valuable good will was created; and the business flourished and was successful.

The defendant concedes the employment by the plaintiffs and the taking of possession of the vacated premises and the conducting by him of the exact type of business under the name and style of " Happy Irishman." He contends that plaintiffs have adopted a name that is not subject to exclusive appropriation; that plaintiff Holzer, not being of *total* Irish extraction, is not entitled to appropriate to his business the name of " Smiling Irishman " and that because of such appropriation he is guilty of a fraud upon the public and is not coming into equity with clean hands and, therefore, is not entitled to equitable relief. These contentions will be considered seriatim.

A plaintiff's right to a trade-mark or trade name need not be exclusive as against the world; it need only be exclusive against the defendant. (*Newman et al.* v. *Alvord et al.*, 51 N. Y. 189.) The word " Italian " as applied to underwear

does not mean that the underwear marked as such was manufactured in Italy or by Italians; or that the silk of which it is composed was produced in Italy or imported therefrom. It, " Italian ", is a byword. (*Kayser & Co.* v. *Italian Silk Underwear Co.,* 160 App. Div. 607.) The word "·Vienna " may be exclusively appropriated for a trade-mark as applied to bread; so may the word " Alderney " as applied to oleomargarine; likewise the word " German " as applied to sweet chocolate as to make the word " Germania " as applied to the same type of chocolate an infringement. (*Fleischmann* agt. *Schuckmann,* 62 How. Prac. 92; *Lauferty* agt. *Wheeler et al.,* 63 How. Prac. 488; *Walter Baker & Co.* v. *Baker,* 77 F. 181.)

A manufacturer at Chester, New York, was upheld in· his claims to the trade-name " Philadelphia Cream Cheese." (*International Cheese Co.* v. *Phenix Cheese Co.,* 118 App. Div. 499.) A manufacturer in New York of " Philadelphia Cream Cheese " was granted injunctive protection of the trade name against a manufacturer in the same locality of " Pennsylvania Cream Cheese " (*Phenix Cheese Co.* v. *Kirp et al.,* 176 App. Div. 735; see, also, *Coca-Cola Co.* v. *Koke Co.,* 254 U. S. 143 where the term " Koke " was restrained in favor of plaintiff's trade name " Coca-Cola ". To the same effect, see, also, *Paddy's Market Produce Dealers & M. Ass'n.* v. *Lutus,* 7 N. Y. S. 2d 676; *De Youngs* v. *Jung,* 7 Misc. 57).

The catch phrase " Smiling Irishman " and the symbols and devices used by the plaintiffs were inseparably attached to their business. (*Lehrenkrauss* v. *Universal Tours, Inc.,* 262 N. Y. 332.) I am convinced that plaintiffs' proof warrants the inference that as now conducted these two establishments did readily lead to confusion and are capable of deceiving the public, especially the careless and unwary, and that the defendant, a former employee, by the use of a trade name similar to plaintiffs', by moving into and taking possession of the premises formerly occupied by the plaintiffs and by the appropriation to his own use of the signs and symbols used by the plaintiffs, is guilty of an intentional imitation of plaintiffs' distinctive and popular catchword. It is the enlightened policy of courts of equity to frown upon violations of accepted business ethics and fair dealing and to exercise their power of injunction to correct chicanery induced by greed.

Finally, considering the equitable maxim of " clean hands " broad as the principle is in its operation, it must still be considered with reasonable limitations; it does not apply to every unconscientious act or inequitable conduct on the part of a plaintiff. The maxim, considered as a general rule controlling

the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events, connected with the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. When a court of equity is appealed to for relief it will not go outside of the subject matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant or the relief which he demands. (*Rice* v. *Rockefeller et al.*, 134 N. Y. 174; *Conlon* v. *Hosier*, 165 N. Y. S. 745, 746.)

A court of equity is not an avenger of wrongs committed at large by those who resort to it for relief, however careful it may be to withhold its approval from those which are involved in the subject matter of the suit and which prejudicially affect the rights of one against whom relief is sought. The rule does not go so far as to prohibit a court of equity from giving its aid to a bad or a faithless man or a criminal. If he is not guilty of inequitable conduct toward the defendant in the transaction, his hands are *as clean* as the court can require.

Thus, it has been held or stated that the fact that the plaintiff is a member of an illegal association or combination, or a lawful association committing unlawful acts or employing unlawful methods, is no defense to a suit to enjoin ticket scalping, infringement of a patent, or unfair and fraudulent competition. (*Pennsylvania Co.* v. *Bay*, 138 F. 203; *General Electric Co.* v. *Wise*, 119 F. 922; *United States Fire E. C. Co.* v. *Joseph Halsted Co.*, 195 F. 295; *Coca-Cola Co.* v. *Gay-Ola Co.*, 200 F. 720.)

Accordingly, the motions made upon behalf of the defendant at the close of the entire case are denied and judgment is ordered in favor of the plaintiffs upon the merits. Submit findings of fact and conclusions of law.