JAMES BROWN, Respondent-Appellant, v FREDERICK LOCKWOOD, Appellant-Respondent.

Second Department, September 22, 1980

## APPEARANCES OF COUNSEL

*Andrew J. Fiore* for appellant-respondent.

*Irving Nitzberg* for respondent-appellant.

## OPINION OF THE COURT

DAMIANI, J.

In an action to recover damages for fraud and deceit, the defendant appeals from a judgment of the Supreme Court, Westchester County (JONES, J.), in favor of the plaintiff. In a second action to recover damages for breach of contract, the defendant appeals from so much of an order of the same court (FERRARO, J.), as denied that part of his motion which was for summary judgment dismissing the first cause of action and plaintiff cross-appeals from so much of the order as granted that part of the motion which was for summary judgment dismissing the second cause of action.

The appeals presently before us are taken in two separate actions between the same parties which arise out of the same set of operative facts. In the first action the plaintiff sought to recover damages for fraud and deceit in the inducement to enter into certain contracts. The principal issue raised in that action involves the proof required to establish constructive fraud where the alleged misrepresentation involves a promise of future performance required by the contracts. In the second action plaintiff sought to recover for breach of the contracts which underlie the claim of fraud in the first action. The appeal and cross appeal in the second action present interesting problems of claim and issue preclusion.

### THE FACTS

The plaintiff in both actions, James Brown, was engaged in

the electrical contracting business in Westchester County from 1946 to 1969. In the latter year he sold his stock in his firm, J.B. Brown Electrical Contractors, Inc., and retired to Florida. The contract of sale contained a noncompetition covenant in which plaintiff promised not to own, operate or manage another electrical contracting business in Westchester County for a period of five years, expiring August 31, 1974. In March, 1971 plaintiff returned from Florida and went to work for his old firm. After about a year, negotiations with the new owners to buy back into the business fell through and plaintiff left their employ.

In the spring of 1972 plaintiff met defendant, Frederick Lockwood, the president and sole stockholder of Lockwood Conditionaire Corporation. The corporation was engaged in the electrical, air conditioning, plumbing, and heating business in Westchester County. Plaintiff and defendant met in April, 1972 and discussed going into business together. According to plaintiff, defendant stated that he desired to expand the electrical division of Lockwood Conditionaire and to eventually sell or eliminate its air conditioning, plumbing and heating branches. Plaintiff disclosed the existence of the noncompetition clause in the contract by which he had sold his own corporation. After a series of meetings it was agreed that plaintiff would be employed on a salary basis by Lockwood Conditionaire as an estimator. Defendant would draw the same salary. After examination and discussion they arrived at values for the inventory and equipment on the premises. Defendant allegedly promised to have separate quarters and separate accounts for the electrical division until the elimination of the other divisions.

Plaintiff and defendant went to the office of Sidney H. Reich, the attorney for defendant and Lockwood Conditionaire. Plaintiff was not represented by counsel. Mr. Reich's opinion was that plaintiff could be employed by the corporation without violating the noncompetition covenant so long as he did not become a partner or actually run the business. As a result of the discussions of the parties Reich prepared three agreements which were executed on June 27, 1972 by plaintiff and by defendant on his own behalf and on behalf of the corporation.

The first agreement provided in substance that Lockwood Conditionaire would employ plaintiff in its electrical contracting division until August 31, 1974, that plaintiff and defen-

dant would receive identical salaries, that they would share equally in the net profits from the electrical contracting division and that in order to ascertain such net profits the corporation would establish and maintain separate bookkeeping records for the electrical contracting division. Plaintiff was not to share in the profits from the other divisions of Lockwood Conditionaire. This agreement also provided that within one week both plaintiff and defendant would lend the sum of $20,000 to the corporation to be used exclusively for the operating costs and expenses of its electrical contracting division. The loans were to be repaid by the corporation on September 1, 1974, without interest.

The second agreement established the value of the tools, equipment, trucks and inventory of the electrical contracting division of Lockwood Conditionaire at $15,000 and established the value of the good will of that division at $10,000. Plaintiff agreed to pay defendant $12,500 for a one-half interest in the electrical contracting division, payable $7,500 immediately and the balance of $5,000 on or before August 31, 1974. In consideration of these payments defendant agreed to transfer a one-half ownership interest in the electrical contracting division no later than September 1, 1974. This second agreement further provided that defendant retained ownership and control of the remaining divisions of the corporation.

The third agreement provided that plaintiff would hold defendant and Lockwood Conditionaire harmless from claims arising out of any alleged breach of the noncompetition clause in the contract by which plaintiff had previously sold his own business.

Apparently the reason for this complicated arrangement was to avoid an open breach of the noncompetition clause by making plaintiff a mere employee of Lockwood Conditionaire until the expiration of the five-year period on August 31, 1974. Thereafter plaintiff would become a one-half owner. Soon after the signings, the performance tendered by the parties materially differed from the terms of the agreements. Plaintiff testified that he had the $20,000 available to lend the corporation but that on the day after the contracts were signed defendant informed him that he did not have the $20,000 to lend at that time and defendant suggested that they both start off by making a loan of $10,000. Defendant testified to the contrary, that it was plaintiff who had indicated that he was unable to make the required contribution since he was buying

a new house and wanted to lend only $10,000. In any event, it is clear that the parties orally agreed to limit the initial loans which they were each required to make to the corporation to $10,000 rather than $20,000.

Plaintiff had his wife draw two checks on their joint account. One for $10,000 payable to the corporation represented plaintiff's required loan and the other for $7,500 payable to defendant represented the down payment upon plaintiff's purchase of a one-half interest in the electrical division. On June 28, 1972 plaintiff gave these two checks to defendant at the latter's office. Defendant did not simultaneously make a $10,000 personal loan to the corporation. Rather, it appears that the corporation borrowed $10,000 from a bank and that defendant personally guaranteed the loan, the proceeds of which were deposited to the credit of the corporation. The bank loan was renewed on several occasions and was eventually paid by the corporation. Defendant testified that he personally loaned $5,000 in September, 1972 and another $3,500 in January, 1973 for the general use of the corporation because it was in need of money.

Plaintiff was employed by the corporation until August, 1973. In October, 1973 he demanded the return of the $17,500 he had advanced and in November, 1974 he commenced two actions. One sought recovery of the $10,000 loan from the corporation. That action went to trial and on April 12, 1978 plaintiff recovered a judgment against Lockwood Conditionaire for $10,000 with interest. The judgment against the corporation remains unsatisfied because on May 15, 1978 it filed a petition in bankruptcy. The other action sought to recover the $17,500 from defendant Lockwood upon the theory that in order to induce plaintiff to enter into the loan, purchase and indemnity agreements, defendant had made fraudulent representations, *inter alia,* as to the value of the assets and good will of the electrical division, his promise to terminate the operations of the other divisions of Lockwood Conditionaire, his promise to make a personal loan to the corporation, his promise to keep separate books and accounts for the electrical division and his promise to devote all his time to the business of that division.

In June, 1978 plaintiff commenced yet another action against defendant Lockwood. The gravamen of this action was breach of contract. The first cause of action sought recovery of plaintiff's $7,500 down payment upon the theory that defen-

dant did not own the electrical division, that it was the property of Lockwood Conditionaire and that defendant had failed to perform the agreement to sell a one-half interest in that electrical division. The second cause of action sought to recover $10,000 damages from defendant for his failure to personally make a $10,000 loan to the corporation in accordance with the loan agreement.

In November, 1978 the fraud action went to trial before Mr. Justice JONES in the Supreme Court, Westchester County. The court found that defendant had been guilty of constructive fraud only with respect to his promise to make a loan to the corporation and in all other respects it found that fraud had not been proven. By judgment dated December 18, 1978 the fraud action was decided in favor of plaintiff and against defendant in the sum of $10,000 with interest from September 1, 1974, together with an award of costs and disbursements.

In January, 1979 defendant moved in the breach of contract action for summary judgment dismissing plaintiff's complaint upon the ground that the judgment in the fraud action was *res judicata* as to all the issues between the parties arising out of the transactions in question. Plaintiff opposed the motion contending that the judgment in the fraud action had not determined the issues relating to a breach of the contract to sell him a one-half interest in the electrical division and the recovery of his $7,500 down payment thereon. Plaintiff offered to discontinue his breach of contract action concerning the $10,000 loan if defendant would withdraw his appeal from the judgment in the fraud action.

By order entered April 13, 1979 Mr. Justice FERRARO granted that part of defendant's motion seeking summary judgment dismissing the plaintiff's second cause of action for breach of the contract to make a loan, on the ground of *res judicata,* but denied that part of the motion seeking summary judgment dismissing the first cause of action to recover for breach of the contract to sell a one-half interest in the electrical division.

### THE FRAUD ACTION APPEAL

In the fraud action defendant's first contention on appeal is that plaintiff should not be permitted to recover because he lacked good faith in entering into the agreements in question. Basically, defendant appears to be claiming that those agreements took the complicated form they did only because plain-

tiff was attempting to violate the noncompetition clause in the contract by which he had previously sold his own electrical business to a third party and that accordingly his present claims of fraud practiced by defendant should be barred by his unclean hands. This claim is without merit. In order for the clean hands maxim to apply to preclude relief to the plaintiff, the wrong complained of by the defendant must have been done to the defendant himself *(Junkersfeld v Bank of Manhattan Co.,* 250 App Div 646; *Sado v Marlun Mfg. Co.,* 196 NYS2d 32). Relief will not be denied because of the plaintiff's wrongdoing in the course of a transaction with a third person or because of a wrong practiced by both parties on a third person (27 Am Jur 2d, Equity, § 142). If a plaintiff is not guilty of inequitable conduct toward the defendant in the transaction, his hands are as clean as the law requires *(Smiling Irishman v McDonald,* 183 Misc 985).

On this same point defendant claims that plaintiff cannot recover because he breached his contract with defendant by (1) failing to pay the $5,000 balance due on the purchase agreement, (2) failing to lend the full $20,000 as promised, and (3) failing to continue working for the corporation. Suffice it to say that claims that the plaintiff breached a contract are not a defense to an action sounding in tort to recover for fraudulent inducement to enter into the contract (see 37 Am Jur 2d, Fraud and Deceit, § 390; Ann. 13 ALR2d 1248; *Girschowitch v DeLong,* 51 NYS2d 499).

Defendant's second point is that plaintiff has been guilty of laches in commencing this action. Although some authorities indicate that laches may successfully be asserted as a defense to an action for fraud (37 Am Jur 2d, Fraud and Deceit, §§ 416-418 and cases cited therein), the law of this State is that laches is a purely equitable defense which may not be interposed in an action at law to recover for the tort of fraud *(Girschowitch v DeLong, supra,* p 500; *Trane Co. v Kidde Constructors,* 58 NYS2d 122, affd 270 App Div 838; cf. *Feldman v Metropolitan Life Ins. Co.,* 259 App Div 123; 36 NY Jur, Limitations and Laches, § 153). The Statute of Limitations is the only means by which a claim that plaintiff delayed in bringing an action at law where relief is not discretionary may be asserted as a defense (36 NY Jur, Limitations and Laches, § 156). In any event, a claim of laches may not, as here, be raised for the first time on appeal (Ann. 173 ALR 326, Pleading Laches, § 1, n 1 and cases cited therein).

■■ Defendant's third point is that plaintiff failed to prove that he breached the agreement to lend money to the corporation and thereby failed to prove fraud. The agreement provided that within one week from June 27, 1972 each party would personally lend the sum of $20,000 to the corporation to be used only as working capital for the electrical division. The proof at trial established that the parties mutually agreed to reduce the loan each was required to make to $10,000. On June 28, 1972 plaintiff gave defendant a check drawn to the order of the corporation for $10,000. Defendant, however, breached the modified agreement in three ways. His personal advances totaled only $8,500; they were used to support all corporate operations and not just those of the electrical division and they were not made within one week as required, but rather $5,000 was advanced in September, 1972 and the remaining $3,500 was advanced in January, 1973. In August, 1972 defendant obtained a short-term $10,000 bank loan for the corporation, upon which he gave his personal guarantee. This advance of $10,000 was also not in compliance with the agreement because it was untimely and, most importantly, was not personally made by defendant. The bank loan to the corporation bore a higher rate of interest than the loan of a comparable sum to an individual. In any event, the agreement of the parties specifically provided that the loans they were to make to the corporation were not to bear interest. Corporate income was used to discharge the principal and interest due on the bank loan and plaintiff's share of the net profits of the electrical division was thereby improperly diminished. We therefore affirm the factual findings of Trial Term that defendant failed to keep his contractual promise to personally loan $10,000 to the corporation within one week of the signing of the contract. That fact does not, however, establish the commission of a fraud.

■ ■ The law recognizes two kinds of fraud—actual or constructive. In order to sustain an action for actual fraud the plaintiff must prove: (1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury (24 NY Jur, Fraud and Deceit, § 14; 37 CJS, Fraud, § 3). Constructive fraud may be defined as a breach of a duty which, irrespective of moral guilt

and intent, the law declares fraudulent because of its tendency to deceive, to violate a confidence or to injure public or private interests which the law deems worthy of special protection *(Southern Inds. v Jeremias,* 66 AD2d 178, 182). The elements of a cause of action to recover for constructive fraud are the same as those to recover for actual fraud with the crucial exception that the element of *scienter* upon the part of the defendant, his knowledge of the falsity of his representation, is dropped *(Manheim Dairy Co. v Little Falls Nat. Bank,* 54 NYS2d 345, 349; *Pitcher v Sutton,* 238 App Div 291, 293, affd 264 NY 638) and is replaced by a requirement that the plaintiff prove the existence of a fiduciary or confidential relationship warranting the trusting party to repose his confidence in the defendant and therefore to relax the care and vigilance he would ordinarily exercise in the circumstances *(Collins v Nelson,* 193 Wash 334; see 37 CJS, Fraud, § 35). The law regards the making of a misrepresentation by a defendant who possesses a position of superiority and influence over the plaintiff by reason of the confidential relationship between them as a breach of duty actionable as constructive fraud (see *Greenfield v Greenfield,* 123 NYS2d 19; 37 Am Jur 2d, Fraud and Deceit, § 15).

Plaintiff's proof failed to sustain most of his allegations of fraud and the only representation upon which Trial Term found defendant liable for constructive fraud was his promise to make a loan of a certain sum of money to the corporation within a stated time in the future.

■ It is the general rule that fraud cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct (see 37 Am Jur 2d, Fraud and Deceit, § 60; 24 NY Jur, Fraud and Deceit, § 50; Ann. 10 LRA [N.S.] 640; Ann. 24 LRA [N.S.] 735; Ann. 51 ALR 46; Ann. 68 ALR 635; Ann. 91 ALR 1295; Ann. 125 ALR 879). Mere unfulfilled promissory statements as to what will be done in the future are not actionable as fraud *(Adams v Clark,* 239 NY 403) and the injured party's remedy is to sue for breach of contract *(Crossways Apts. Corp. v Amante,* 213 App Div 430, 437). An exception to this rule is that where the defendant makes a promise as to future action for the purpose of inducing the plaintiff to enter into a contract and does not fulfill that promise, a party who relies thereon to his detriment may recover for fraud where he can prove that at the time the promise was made the defendant

had no intention of carrying it out *(Deyo v Hudson,* 225 NY 602, 612; Ann. 51 ALR 46, 63). The theory upon which this result is based is that the existence of a person's intention or nonintention to perform or forebear from performing a certain act is a question of fact. Where a party represents that he intends to act when in actuality he has no such intention, he has made a misrepresentation as to his state of mind and has thus misrepresented a then existing fact. The point of law is well summarized in *Hobaica v Byrne* (123 Misc 107, 109-110):

"Defendant urges that the complaint is faulty because there is no allegation of any misrepresentation concerning a material existing fact; that at best the alleged misstatement was nothing more than a promise to perform some act in the future, and that such an assurance does not amount to legal fraud, although subsequently broken without excuse. It is true that the mere failure to keep one's promise, even if the promisor has no excuse for his failure so to do, cannot be made the basis of an action in fraud. But where one, for the purpose of inducing another to enter into a contract with him, intentionally makes a false statement of what he intends to and will do, such statement constitutes fraud, if the party to whom it was made relies thereon, and will sustain an action for damages. *Adams v. Gillig,* 199 N.Y. 314; *Ritzwoller v. Lurie,* 225 id. 464.

"In other words, a person's existing intent shows his state of mind, and a person's state of mind is an existing fact, and when one asserts that he intends to or will do a certain thing in the future, when in fact he has no such intention, that is a statement of an existing fact and not a recital simply promissory in its nature."

In order to establish actual fraud it was incumbent upon plaintiff to prove *scienter,* that is, that at the time he contracted, the defendant had no intention of making the required loan. The only thing in this record that might lead to the conclusion that defendant never intended to perform was the fact that he did not so perform. However, the Court of Appeals has held that: "[p]roof of failure to keep a promise may tend to establish the intent not to keep it, but common experience teaches us that such proof is not conclusive; that the making of an unkept promise does not imply of necessity in all cases a present intention not to keep the promise" *(Adams v Clark,* 239 NY 403, 410, *supra).* Where the only proof is that the defendant failed to keep his promise, it is

insufficient to establish that the defendant did not intend to perform at the time the promise was made *(Lanzi v Brooks,* 54 AD2d 1057, 1058, affd 43 NY2d 778; *Hobaica v Byrne, supra;* 37 Am Jur 2d, Fraud and Deceit, § 478). Fraudulent intent not to perform a promise cannot be inferred merely from the fact of nonperformance *(Adams v Clark, supra;* Ann. 51 ALR 46, 163, n 147) and additional proof is required (Ann. 51 ALR 46, 163-170; cf. *Deyo v Hudson,* 225 NY 602, *supra).* No such additional proof appears in this record and accordingly plaintiff failed to prove actual fraud with respect to the defendant's promise to make a loan.

■ The other exception to the rule of nonliability in fraud for failure to perform a promise to do an act in the future concerns the situation in which the unfulfilled promise was made by a defendant who shared a confidential or fiduciary relationship with the plaintiff. This exception rests upon the theory of constructive fraud and it constitutes the basis upon which Trial Term gave judgment to plaintiff, stating: "It seems also clear that defendant, either had no actual intention of fulfilling his part of the agreement, particularly with respect to the cash advance of $10,000 that *each* party specifically undertook to make within one week of the agreement, or that for some reason he found himself unable to do so * * * If [the] spectacular failure of consideration under the contract cannot be seen as actual fraud in the inducement, it at least provides an arguable basis for a claim of constructive fraud on his part with respect to the $10,000 loan."

Where because of a confidential or fiduciary relationship the parties do not stand on an equal footing and one of them justifiably relies upon a promise of future performance, or a prophecy of future results made by the party with the superior position, an action to recover for constructive fraud may lie, irrespective of any actual intent to defraud upon the part of the defendant, if the promise is broken or the prophecy does not come true. It is essential, however, that plaintiff establish the existence of a confidential or fiduciary relationship such as parent and child, husband and wife, guardian and ward, trustee and *cestui que trust,* principal and agent, or attorney and client (see, e.g., *Wood v Rabe,* 96 NY 414; 37 Am Jur 2d, Fraud and Deceit, § 16). Charges of constructive fraud based upon promises of future performance have also been sustained in purely business transactions where the defendant promisor has, or should have, superior and accurate knowl-

edge concerning the matters to which his statements relate. For example, where representations by officials of a bank that certain bonds were "as good as gold" and that the bank would stand by them induced the plaintiff to purchase the bonds for investment and there was a default, constructive fraud was found (*Mears v Accomac Banking Co.,* 160 VA 311; see, also, cases cited in Ann. 51 ALR 46, 81; Ann. 68 ALR 635, 638; Ann. 91 ALR 1295, 1299; Ann. 125 ALR 879, 882). Suffice it to say that in purely business transactions the defendant against whom constructive fraud is alleged must have misled the plaintiff by false representations concerning the subject of his superior knowledge or expertise. Such claims are rarely sustained in New York (see *First Nat. Bank of Hamden v Kaufman,* 58 AD2d 668; *First Nat. Bank of Rochester v Cutali,* 75 Misc 2d 268).

It is our opinion that Trial Term erred in finding the existence of constructive fraud in the circumstances of this case. This was an arm's length business transaction between two individuals each of whom had years of experience in the electrical contracting field and neither of whom enjoyed a position of superior knowledge or expertise over the other. Furthermore, the alleged broken promise related not to the conduct of the electrical contracting business but rather concerned the defendant's intention to personally make a loan of money to the corporation. The relationship of the parties simply did not warrant the plaintiff to fail to take the steps dictated by ordinary prudence to ascertain whether defendant had the intention and ability to comply with that promise.

Accordingly, the judgment in the fraud action should be reversed and plaintiff's complaint dismissed.

### THE BREACH OF CONTRACT ACTION APPEAL

Defendant has appealed from so much of the order of Mr. Justice FERRARO, entered April 13, 1979, as denied that part of his motion for summary judgment which was to dismiss plaintiff's first cause of action to recover his down payment of $7,500 toward the purchase of a one-half interest in the electrical division of Lockwood Conditionaire and plaintiff has cross appealed from so much of that order as granted that part of defendant's motion for summary judgment which was to dismiss his second cause of action to recover for breach of the agreement to make a loan. Summary judgment was

sought and partially granted solely upon the ground of *res judicata.*

▮ It has been said that the doctrine of *res judicata* embraces many concepts and that because of the indiscriminate use of terminology the differences between the concepts are often confused *(Matter of Reilly v Reid,* 45 NY2d 24, 27; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.08). "Claim preclusion" involves the question of whether a plaintiff's present claim, as distinguished from discrete issues previously litigated, has been extinguished by a final adjudication in a prior proceeding *(Matter of Reilly v Reid, supra,* p 27). A claim can be precluded by two concepts, merger or bar. Where a judgment is in favor of the plaintiff the claim underlying the action is *merged* in the judgment and cannot thereafter be used as a basis for an independent action, although the plaintiff may bring an action on the judgment as permitted by CPLR 5014 (5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.08; Restatement, Judgments 2d [Tent Draft No. 1, 1973], § 45, subd [a] and § 47). If the judgment is in favor of the defendant the claim is extinguished and the judgment *bars* a subsequent action thereon (Restatement, Judgments 2d [Tent Draft No. 1, 1973], § 45, subd [b] and § 48).

▮ "Issue preclusion" involves the question of whether disputed legal or factual issues have been conclusively determined in a prior action. The general rule is that when an issue of fact or law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or a different claim (Restatement, Judgments 2d [Tent Draft No. 1, 1973], § 68). The term "collateral estoppel" is used to denote issue preclusion where the second action is based on a different claim. The term "direct estoppel" is used to denote issue preclusion where the second action is based upon the *same* claim (see 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.08; Survey of New York Practice, 53 St. John's L Rev 169, n 267).

▮ On this appeal defendant asserts that claim preclusion applies to extinguish the causes of action asserted in the breach of contract action. We disagree.

In order to determine whether *res judicata* in the form of claim preclusion applies it must be decided whether the same "cause of action" or "claim" is involved in both cases. In

*Matter of Reilly v Reid* (45 NY2d 24, 27-31, *supra)* the Court of Appeals stated in relevant part:

"It is blackletter law that a valid final judgment bars future actions between the same parties on the 'same cause of action' (see, e.g., 50 CJS, Judgments, § 598). The difficulty arises in determining when a second action involves the same cause of action as an earlier one *(Perry v Dickerson,* 85 NY 345, 348). Many definitional verbalizations have been attempted, none with complete success. For instance, in *Secor v Sturgis* (16 NY 548, 558) it was said that '[t]he true distinction between demands or rights of action which are single and entire, and those which are several and distinct is, that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts.'

"In *Schuylkill Fuel Corp. v Nieberg Realty Corp.* (250 NY 304, 306-307) Chief Judge CARDOZO stated the formulation as: 'A judgment in one action is conclusive in a later one * * * when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first'. But even this formulation, now a classic, does not solve the more subtle situations which arise. For one thing, the formulation defines a consequential test, rather than the promise which leads to the consequence.

"The nub of the problem is that the policy bases for *res judicata,* in the sense of claim preclusion, do not permit easy definition of the 'same cause of action', a term which, as will be seen, is not one of single meaning in the practice. * * *

"A 'cause of action' may denote one of several separately stated claims in a pleading based on the same congeries of facts but related to different legal theories of recovery. A 'cause of action' may also denote a separately stated claim on the same congeries of facts, but for different legal relief. But even if there are variations in the facts alleged, or different relief is sought, the separately stated 'causes of action' may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought. In the sense of *res judicata* or claim preclusion, although there may be separately stated or statable causes of action, they are nevertheless based on the 'same cause of action', to which the consequential test defined in the *Schuylkill* case *(supra)* applies. Nor will differences in legal theory generally avail to permit relitigation of

claims based on the same gravamen (see *Matter of Gowan v Tully,* 45 NY2d 32, 36, decided herewith).

"Section 61 of Restatement of Judgments, Second (Tent Draft No. 1, 1973), exemplifies the trend away from rigid formulations. It provides:

" '§ 61. Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting"

" '(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar [citations omitted], the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

" '(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

"Thus, no single definitional formulation is always determinative. This does not mean, however, that the principles are to be applied on a case-by-case basis. It does mean that there are varying categories of cases, categories which are recognized as in the rules used and suggested in the Restatement in determining 'factual groupings'. * * *

"[W]here the same foundation facts serve as a predicate for each proceeding, differences in legal theory and consequent remedy do not create a separate cause of action (see *City of Rye v Metropolitan Transp. Auth.,* 24 NY2d 627, 637; *Eidelberg v Zellermayer,* 5 AD2d 658, 663, affd 6 NY2d 815). The principle is made explicit in section 61.1 of Restatement of Judgments, Second (Tent Draft No. 1, 1973):

" '§ 61.1 Exemplifications of General Rule Concerning Splitting

" 'The rule of § 61 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

" '(a) To present evidence or grounds or theories of the case not presented in the first action, or

" '(b) To seek remedies or forms of relief not demanded in the first action.'

"It is true that even when two successive actions arise out of the identical course of dealing, the second may not be barred, it has been said, if '[t]he requisite elements of proof and hence the evidence necessary to sustain recovery vary materially' *(Smith v Kirkpatrick,* 305 NY 66, 72, *supra).* That is not, however, the present situation. In each petition it is alleged that petitioner was wrongfully deprived of his duties. Whether that alleged wrong is rectified by restoring the duties to petitioner's old position or by transferring petitioner to a new position is of insufficient legal consequence. In either event, petitioner must establish that abolition of his position without transferring him to an equivalent position was in violation of law. The precise theory on which illegality of the action is predicated may be different, but that does not entitle petitioner to separate his claims *(Eidelberg v Zellermayer,* 5 AD2d 658, 663, *supra;* Restatement, Judgments 2d [Tent Draft No. 1, 1973], § 61.1)."

Thus, in *Matter of Reilly v Reid (supra)* the Court of Appeals adopted the test of identity of claims recommended by the drafters of the Restatement of Judgments, Second, but with a slight modification. *Matter of Reilly* holds that where two cases arise out of the same transaction, or series of connected transactions, a judgment in one will extinguish the underlying claim in the other despite differences in legal theory or requested relief *except* where the requisite elements of proof, and hence the evidence necessary to sustain recovery, vary materially (see *Julien J. Studley, Inc. v Lefrak,* 48 NY2d 954, 956; 1978 Survey of New York Law, Part 4, 30 Syracuse L Rev 449).* We now turn to an application of this test to the case at bar.

The first action was based upon the alleged fraud of the defendant in inducing plaintiff to enter into certain contracts with the latter. The second action is based upon breach of those contracts.

In most instances, the fraudulent representations made to induce the plaintiff to enter into a contract are different from

---

* The exception, originally formulated in *Smith v Kirkpatrick* (305 NY 66, 72), is in conflict with subdivision (a) of section 61.1 of the Restatement of Judgments, Second (Tent Draft No. 1, 1973) which the Court of Appeals also cited with approval in *Matter of Reilly v Reid* (45 NY2d 24). However, in the later case of *Julien J. Studley, Inc. v Lefrak* (48 NY2d 954, 956) the court specifically applied the exception, thereby settling New York law in favor of the exception and against subdivision (a) of section 61.1 of Restatement of Judgments, Second (Tent Draft No. 1, 1973).

the promises of performance contained in the contract itself. Where such is the case, an action to recover for fraud in the inducement involves proof of the facts of a different phase of the transaction than that involved in an action to recover for breach of the contract itself. The evidence necessary to sustain a recovery varies materially and hence under the rule of *Matter of Reilly v Reid (supra)* the doctrine of *res judicata* in the sense of claim preclusion would not apply to prevent a second action on either of the different theories (see *Julien J. Studley, Inc. v Lefrak, supra;* 50 CJS, Judgments, § 676). In these actions, however, the fraudulent representations which plaintiff alleged that defendant made to induce him to enter into the contracts are embodied in the agreements between the parties as the very promises which plaintiff claims were not carried out and which therefore form the basis of his breach of contract claims. Although the cause of action for fraud has more elements than that for breach of contract, in order to establish a right to recover under either theory the plaintiff in the cases presently before us would necessarily have to prove both that the promises in question were made and that they were not performed. The proof in the prior fraud action therefore necessarily encompassed all the proof required to establish his breach of contract claims and accordingly the doctrine of *res judicata* would ordinarily apply to require dismissal of both causes of action asserted in the later breach of contract action (but see contra *Lipkind v Ward,* 256 App Div 74).

It might be suggested that since we have dismissed the plaintiff's complaint in the fraud action for failure to prove an element not shared by the breach of contract action (viz., the plaintiff's failure to establish an actual intent on defendant's part to defraud or his failure to establish the existence of the confidential relationship necessary to a finding of constructive fraud), the subsequent breach of contract action should not now be barred by the doctrine of claim preclusion. However, since all the facts regarding the making and the breach of the contracts were relevant to both actions and were actually litigated in the first action, claim preclusion would ordinarily apply to bar the legal theory of the second action because it could, and should, have been asserted in the first (see *Cowan & Co. v National Bank of North Amer.,* 64 AD2d 603; *Matter of Forst v Wohl,* 67 AD2d 729, app dsmd 48 NY2d 753). That the unpresented legal theory might be meritorious whereas

the theory presented was not is immaterial since the rule forbidding claim splitting requires a plaintiff to combine all legal theories arising out of a transaction or series of connected transactions where the several theories are dependent on the same evidence (see Survey of New York Practice, 53 St. John's L Rev, 172, n 285).

It is our opinion, however, that an important exception to the doctrine of *res judicata* in the sense of claim preclusion applies here. Proposed section 61.2 of the Restatement of Judgments, Second, provides in relevant part:

"§ 61.2. Exceptions to the General Rule Concerning Splitting

"(1) When any of the following circumstances exists, the general rule of § 61 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

"(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, *or the defendant has acquiesced therein*". (Restatement, Judgments 2d [Tent Draft No. 1, 1973], § 61.2; emphasis added.)

The purpose of the doctrine of *res judicata* is to provide finality in the resolution of disputes to assure that parties may not be vexed by further litigation *(Matter of Reilly v Reid,* 45 NY2d 24, 28, *supra; Matter of New York State Labor Relations Bd. v Holland Laundry,* 294 NY 480, 493-494; *Weiner v Greyhound Bus Lines,* 55 AD2d 189, 191; *Lipkind v Ward,* 256 App Div 74, 78, *supra).* The rule having been designed to protect defendants from being vexed by multiple suits, it stands to reason that acquiescence by the defendant will work a waiver.

Here both actions were for a time pending undetermined in the same court. If defendant objected to the maintenance of the second suit he could have moved to dismiss it pursuant to CPLR 3211 (subd [a], par 4) upon the ground that there was "another action pending between the same parties for the same cause of action" (see Siegel, Practice Commentaries, McKinneys Cons Laws of NY, Book 7B, CPLR C3211:15, p 21). In addition, it is clear that both plaintiff's first and second actions involve common questions of fact. Since such is the case, if the defendant felt himself burdened by multiple suits he could have moved for consolidation or for a joint trial under CPLR 602. There is no evidence in this record that he moved under either provision.

This is precisely the situation envisioned by the drafters of the Restatement of Judgments, Second, when they included the rule which prevents extinguishment of a claim if the defendant acquiesces in multiple suits. The comments to section 61.2 (subd [1], par [a]) states in relevant part: "Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim."

The most persuasive reason for holding that defendant acquiesced in the splitting of plaintiff's claim is to be found in colloquy between court and counsel at the conclusion of the fraud action. At that time the court inquired as to whether if it found that fraud had not been proven, it could still find that a breach of contract had occurred. Defendant's counsel informed the court of the pendency of plaintiff's separate breach of contract action and contended that in such circumstances the court was limited to the allegations of fraud presently before it. This was so, claimed defendant's counsel, because if the breach of contract action had also been before the court he might have defended it somewhat differently. When asked by the court if he thought that realistically the proof in the breach of contract action would be any different from that in the fraud action, defendant's counsel could only respond that in the contract action he would assert several counterclaims which had not been raised in the fraud trial and that accordingly the proof would differ.

In light of defendant's claim at the time of the fraud trial that the proof in the two actions would be different and that he would defend both differently, he should not now be permitted to assert the defense of *res judicata* in the sense of claim preclusion in the subsequent contract action.

█ We now turn to the question of issue preclusion. We have affirmed the factual findings of Mr. Justice Jones in the fraud trial that the parties had entered into a contract to personally lend a sum of money to the corporation exclusively for the use of its electrical division, within one week from the date of the contract, that they orally agreed to reduce the amount to be loaned to $10,000, that plaintiff performed his

part of the contract and that defendant did not perform because he only loaned $8,500 personally some months late and this money was not exclusively used for the electrical division. Further, defendant breached the agreement because rather than lending $10,000 personally he had the corporation borrow that sum from a bank and he merely guaranteed the loan to the lender. These factual findings are amply supported by the record in the fraud action, they have now been affirmed on appeal, and on elementary principles of issue preclusion, they should be deemed conclusively established in the breach of contract action. Although it is our opinion that they make out a prima facie case under the second cause of action seeking to recover for breach of the loan agreement, we decline at this juncture to search the record and to grant partial summary judgment to plaintiff on that cause of action. If he be so advised, plaintiff may move for that relief, at which time the court may explore the defense of the Statute of Limitations raised in defendant's answer, which defense has not been briefed or argued on this appeal. Since the trial court in the fraud action made no factual findings concerning defendant's alleged breach of the agreement to sell a one-half interest in the electrical division, the rules of issue preclusion do not apply to prevent litigation of the first cause of action asserted in plaintiff's breach of contract complaint.

The remaining issue in these cases concerns the proper measure of damages for breach of the contract to make a loan. The issue first arose in the fraud action at which time the court simply awarded plaintiff $10,000 with interest from the date the loan was due, upon a finding that defendant was guilty of constructive fraud in the inducement. While such a simple expedient may have been justified in the fraud action upon the theory that plaintiff would not have made the loan and sustained his loss had it not been for the alleged fraudulent inducement of the defendant, we have found no proof of fraud and an award of damages must now be predicated solely upon plaintiff's claim of breach of contract. The agreement provided that each party would make a loan to the corporation and did not make either party a guarantor of payment of the other's loan in the event that the corporation defaulted. Plaintiff has been unable to collect the loan from the corporation because it is bankrupt.

It is elementary that the measure of damages in a breach of contract action is that the plaintiff is, so far as

monetarily possible, to be placed in the same situation as if the contract had been fully performed by the defendant (Simpson, Contracts [2d ed], § 195). The plaintiff must therefore prove that his loss was suffered as a result of the defendant's breach (Simpson, Contracts [2d ed], § 197). Since plaintiff cannot recover the proceeds of the loan from the corporation because it is a bankrupt, it follows that in order to shift the duty to repay from the corporation to defendant, he must show that he would have been repaid by the corporation but for defendant's nonperformance. That is to say defendant's failure to timely make a personal loan in the required amount must have been a substantial contributing cause of the corporation's bankruptcy. Failing such proof plaintiff will be entitled only to nominal damages for breach of the loan agreement.

Accordingly, the order appealed from should be modified so as to deny defendant's motion for summary judgment in its entirety. The breach of contract action should be tried in accordance with the foregoing opinion.

HOPKINS, J. P., GULOTTA and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Westchester County, dated December 18, 1978, reversed, on the law, without costs or disbursements, and complaint dismissed.

Order of the same court, entered April 13, 1979, modified by (1) deleting therefrom the provision granting that part of defendant's motion which was for summary judgment as to the second cause of action and (2) adding thereto a provision denying said part of the motion. As so modified, order affirmed, without costs or disbursements.