**GOSHEN LITHO, INC., Plaintiff,**

v.

**James KOHLS and Flynt Distributing Company, Inc., Defendants.**

No. 81 Civ. 3362–CSH.

United States District Court,
S.D. New York.

April 29, 1983.

George L. Barnett, Mazur, Carp & Barnett, P.C., New York City, for plaintiff.

Duncan Darrow, O'Sullivan, Wolf, Karabell & Graev, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Goshen Litho, Inc. brings this diversity action to recover an outstanding $11,227.24 printing and shipping bill for services rendered to Boxing Publications, Inc. ("BPI"). Defendants are Flynt Distributing Company, Inc. ("Flynt"), a magazine and book distributor, and James Kohls, former executive vice-president of Flynt. The case is presently before the Court on defendants' motion, pursuant to Fed.R.Civ.P. 12(b)(6) and 56, for dismissal of the complaint or, in the alternative, for summary judgment, and plaintiff's cross motion for summary judgment.[1]

## FACTS

In January of 1981, plaintiff entered into an agreement with BPI to print *Boxing Digest*, a periodical published by BPI. The magazine was to be distributed by defendant Flynt pursuant to an agreement with BPI granting Flynt the exclusive right to distribute BPI's publications.

After printing but prior to shipping the February 1981 issue of the magazine, plaintiff asked BPI for a "publisher's assignment" to ensure the payment of plaintiff's bill.[2] Plaintiff admits it never received a written assignment from the publisher, but avers that during a telephone conversation between plaintiff and defendant James Kohls, who until recently served as defendant Flynt's Executive Vice-President, Kohls promised that Flynt would pay the publisher's printing bill if plaintiff shipped the magazines. Plaintiff, relying on defendant Kohls' oral promise, shipped the goods to Flynt, who distributed the magazines and later failed to pay plaintiff. In April of 1982, BPI filed a petition of bankruptcy under Chapter 7 of the Bankruptcy Code.

Plaintiff's complaint states three causes of action. The first alleges a breach of Kohls' oral promise to reimburse Goshen for the printing bill. The second sounds in fraudulent inducement in the making of a

---

1. Plaintiff also moved to add Boxing Publications, Inc. as a party defendant, for permission to amend its complaint, and for summary judgment on the amended complaint. At oral argument plaintiff agreed that B.P.I.'s filing for bankruptcy had mooted its cross motion.

2. A publisher's assignment is the written assignment entered into between the publisher and the printer assigning sufficient proceeds from the sale of the magazine to cover the printing bill.

contract. The third claims the publisher's assignment covering the January issue is applicable to the February issue as well. Defendants move for summary judgment on each of plaintiff's claims.

## I.

### SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment to be granted only where there is "no genuine issues as to any material fact," and a party is "entitled to a judgment as a matter of law." "Not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy as to the inferences to be drawn from them ...." In determining whether or not there is a genuine factual issue, "the court should resolve all ambiguities and draw all reasonable inferences against the moving party." *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981). With these standards in mind, I turn to defendants' motion for summary judgment on the three asserted causes of action.

### A. The Contract Claim

Defendants contend and plaintiff concedes that the oral promise allegedly made by Mr. Kohls was a promise to pay for the debt of another and not a novation. Therefore, absent some note or memorandum, the oral promise is unenforceable under the New York Statute of Frauds. N.Y.Gen.Oblig.Law § 5–701(a)(2). In essence, defendants argue that, even assuming plaintiff can prove all the facts alleged, its contract claim is without merit.

In *Siegel Trading Co. Inc. v. Ungar,* 422 F.Supp. 1064 (S.D.N.Y.1976), the defendant, a former sales representative in plaintiff's commodities brokerage firm, was alleged to have orally agreed, as a condition of employment, to be liable for deficits in his customers' accounts. In denying defendant's motion for summary judgment, Judge Lasker stated:

"... [S]ummary judgment on these facts would be inappropriate due to the possi-

ble application of the 'main purpose' or 'leading object' rule. See Calamari, *The Suretyship Statute of Frauds,* 27 Ford. L.Rev. 332, 343 (1958); 2 Corbin on Contracts § 366 et seq. (1950). As Corbin explains, paraphrasing the holdings of *Davis v. Patrick,* 141 U.S. 479, 487–88, 12 S.Ct. 58 [59–60], 35 L.Ed. 826 (1891) and *Emerson v. Slater,* 63 U.S. (22 How.) 28, 43, 16 L.Ed. 360 (1859):

" 'When the leading object of the promise or agreement is to become guarantor or surety to the promisee for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after or at the time with the promise of the principal, is within the statute, and not binding unless evidenced by writing. On the other hand, *when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.'* (Corbin, supra, § 366, emphasis added)." *Siegel Trading, supra,* 422 F.Supp. at 1065.

Viewing the facts before the Court in the light most favorable to the party opposing the motion for summary judgment, I find that defendant's oral promise could be construed as a self-interested effort to ensure that FDC would realize a profit. Defendant makes a profit only when magazines are distributed to retailers and subsequently sold to the public. Plaintiff had informed defendant that, absent a publisher's assignment, it would not ship the February issue. It was at this point that defendant Kohls stated to plaintiff's vice president that "... if it [the magazine] wasn't shipped shortly, there would be no value to shipping it at all." Kohls' dep. at 7. In other words, Flynt's primary objective would be defeated without Mr. Kohls' assurance of payment. Therefore the "leading object" rule or "main purpose" doctrine could arguably take the oral promise outside the requirements of the Statute of Frauds. For the reason above, defend-

ants' motion for summary judgment on this cause of action is denied.

## B. The Fraud Claim

Defendants argue that plaintiff's fraud claim must fail since the element of justifiable reliance inducing the plaintiff to act to his detriment does not exist, as a matter of law. Defendants assert that because plaintiff's true economic injury was sustained in the printing of the magazine, the alleged subsequent oral promise cannot be said to have injured plaintiff.

■ Defendants overlook the fact that plaintiff surrendered valuable rights by relying on defendants' oral promise. In shipping the magazine, plaintiff lost substantial leverage for obtaining a written assignment from the publisher. In addition, plaintiff surrendered what rights it might have had under the Uniform Commercial Code to demand assurances of performance, N.Y.U.C.C. § 2–609, in the absence of which plaintiff would have had the right to resell the magazines to Flynt directly. N.Y.U.C.C. §§ 2–703(d), 2–706. It is common ground that after relying on defendants' promise and shipping the magazines, plaintiff was never compensated for the printing or the shipping. Thus, there exists a genuine issue as to whether or not plaintiff suffered an economic injury in relying on defendants' promise.

■ Defendants' next point is that plaintiff's only proof of scienter is Flynt's promise and subsequent failure to perform on that promise. Citing Brown v. Lockwood, 76 A.D.2d 721, 432 N.Y.S.2d 186 (2d Dept.1980), defendants argue that "[f]raudulent intent not to perform a promise cannot be inferred merely from the fact of nonperformance." However, evidence of fraud is rarely susceptible of direct proof and must ordinarily be established by circumstantial evidence and the legitimate inferences arising therefrom. Gerstle v. Gamble-Skogmo, Inc., 298 F.Supp. 66 (E.D. N.Y.1969), modified, 478 F.2d 1281 (2d Cir. 1973). In this case, unlike Brown, fraudulent intent can be inferred from the additional evidence available. The nature and extent of the party's prior course of dealings, the defendants' knowledge of BPI's financial insecurity, and Kohls' subsequent denial of a promise he was alleged to have made, taken together with all the evidence, could permit an inference by the fact finders of fraudulent intent. In short, material issues of fact exist with respect to the issue of defendants' intent. Therefore, defendants' motion for summary judgment on plaintiff's second cause of action is denied.

## C. The Written Assignment Claim

The relevant language of the January assignment states:

"The undersigned Publisher, in order to induce GOSHEN LITHO INC., having its principal place of business in Chester, New York to enter upon the printing and production of the BOXING DIGEST, owned by said Publisher and for other good and valuable considerations, does hereby sell, assign, convey and transfer all of its rights, title and interest in and to all of the proceeds to be derived from the FLYNT DISTRIBUTING CO. up to the maximum sum of the entire printing bill of the Publisher at the presently estimated cost of printing the above, based on $9,994.40...."

Defendants contend that it was the intent of the parties that assignments were made in contemplation of specific printing jobs. To illustrate their contention, defendants point out that the estimated printing cost in the January assignment is exactly the same as the amount of plaintiff's invoice for printing the January issue. Defendants also point to other assignments the plaintiff entered into with BPI for the printing of a special magazine supplement, and to plaintiff's vice president's deposition testimony where, in response to a question of whether the deponent had a specific assignment for the February issue, he stated:

"A. I will explain it to you so you will know. We usually get these things before we start printing. It was supposed to be sent to us, but was not by error.

Mr. Kohls admits it was an error. To me it was an error." Traub deposition at 12.

In light of the Court's obligation to draw all reasonable inferences against the moving party, summary judgment is rarely appropriate where the moving party's state of mind is a material issue. *Equal Employment Opportunity Commission v. The Home Insurance Company*, 672 F.2d 252, 257 (2d Cir.1982). Where, as in this case, the intent of the parties to an agreement is a material issue of fact, summary judgment is appropriate only when the movant party can show that the non-movant party's interpretation is unreasonable. *New York State Energy Research and Development Authority v. Nuclear Fuel Services, Inc.*, 666 F.2d 787 (2d Cir.1981).

Although defendants have cast substantial doubt on plaintiff's ability to recover on this theory at trial, they have not made a sufficient showing to be entitled to a summary resolution of this claim. The assignment, by its own terms, specifies that it is for the printing and production of *Boxing Digest*. It is not specifically limited to the printing of the January issue. Defendants' claim that the limited coverage of the assignment can be shown by comparing plaintiff's printing invoices with the assignment's estimated dollar figure asks this Court to draw an inference in favor of the movant party. In addition, support for plaintiff's interpretation can arguably be found in the broad language of the assignment. The document assigns all proceeds "up to the maximum sum of the entire printing bill of the publisher...."

For the reasons stated above, I deny summary judgment on the plaintiff's third cause of action.

## II.

### KOHLS' MOTION TO DISMISS

Defendants' final point is that the Court does not have personal jurisdiction over defendant Kohls and must therefore dismiss the action with regard to him. Defendant Kohls, sued here in his individual capacity, is alleged to have perpetrated a fraud upon plaintiff during a single long-distance telephone conversation. At the time of the call, defendant Kohls was situated in Los Angeles, California, and plaintiff's agent was situated in New York.

Under the New York Civil Practice Law and Rules, personal jurisdiction over a non-domiciliary individual defendant would ordinarily derive from § 302, which provides for such jurisdiction in the event that the defendant "transacts business" in New York. However, the courts of this Circuit have consistently held that the rule in New York is that long-arm jurisdiction cannot be asserted over an individual defendant based upon acts performed by that person in his capacity as a corporate official. If an individual has contact with a state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. "The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Marine Midland Bank N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir.1981).

The evidence on this issue is quite clear. Plaintiff's vice president testified as follows:

"Q. In connection with the Traub-Kohls conversation, was it your understanding that when Mr. Kohls was talking to you, he was talking to you as an official of FDC?

"A. Yes.

"Q. And you had no understanding that Mr. Kohls, when talking to you in the Traub-Kohls conversation, was acting in any way outside the scope of his official duties as an FDC executive, is that correct?

"A. Yes."

Based on this unrebutted testimony, the nature of Mr. Kohls' contact with this fo-

rum does not permit an exercise of personal jurisdiction over him. Therefore, defendants' motion to dismiss the complaint with respect to defendant Kohls is granted.

In conclusion, defendant Flynt's motion for summary judgment dismissing plaintiff's complaint is denied. Defendant Kohls' motion for summary judgment dismissing the complaint as against him in his individual capacity is granted. Plaintiff's cross motion against B.P.I. is denied as moot. Counsel are directed to appear at a final pretrial conference on Friday, June 3, 1983, at 2:00 p.m. in Courtroom 312.

It is So Ordered.