Bergan, J.
By chapter 717 of the Laws of 1967 the Legislature amended the Public Authorities Law in a number of respects and made relevant changes in related statutes. Among *632 other things, in form, at least, it created the Metropolitan Transportation Authority or continued a previously created authority under this name (§ 83; Public Authorities Law, § 1263). It also created the Niagara Frontier Transportation Authority (§96; Public Authorities Law, § 1299-c).
Plaintiff City of Rye and intervenor Town of Oyster Bay in their respective actions against the Metropolitan Transportation Authority and certain State officers for a declaratory judgment contend that chapter 717 is unconstitutional because it does not conform to the mandate of section 5 of article X of the New York Constitution.
This section provides that no public corporation having authority to contract indebtedness and to collect fees and charges shall be “created” except by “ special act of the legislature ”, Concededly the Metropolitan Transportation Authority is that kind of a public corporation as, indeed, is the Niagara Frontier Transportation Authority.
The particular thrust of the attack by the city and by the town on the constitutionality of the 1967 statute is the provision of section 92, which added subdivision 9 to section 1266 of the Public Authorities Law. This subdivision empowers the Metropolitan Transportation Authority under certain prescribed conditions to build two bridges over Long Island Sound, one of which would be located as determined by the Authority in an area in the Town of Oyster Bay crossing to Westchester County at a point near the City of Rye.
The Court at Special Term granted judgment in favor of the city and the town declaring portions of the statute (Public Authorities Law, § 1266, subd. 9, par. [a], and parts of pars, [o], [d], [e]) added by section 92 of chapter 717 of the Laws of 1967 unconstitutional. The ground is not specified in the judgment. Reference to the opinion of the court discloses that the basis for the judgment is the court’s view that the authorization to build the bridges was in contravention of the constitutional requirement that the public corporation authorized to do this must be created by special act.
The Metropolitan Transportation Authority and the State officers affected adversely in their powers by the declaratory judgment appeal directly to this court on constitutional grounds. The Niagara Frontier Transportation Authority has appeared *633 as amicus curiae, contending that if the judgment at Special Term is right, its existence is imperiled since it was created by the same 1967 statute.
The judgment was specifically pointed to the section of the statute authorizing the building of the Bye-Oyster Bay bridge over Long Island Sound. Since section 5 of article X does not deal with a legislative direction to State officers or agencies to build bridges, but is concerned solely with the creation of public corporations, the validity, in the constitutional sense, of the power of the Metropolitan Transportation Authority to build bridges must necessarily depend on the validity of the creation of the corporation.
Although it is arguable, and has been suggested, that the Metropolitan Transportation Authority was actually created by an amendment to the Public Authorities Law in 1965 under the name Metropolitan Commuter Transportation Authority and that the 1967 statute was merely a continuance of the original corporate entity with a change of name and of some, but not all powers, it seems preferable to meet the issue squarely by treating section 83 of chapter 717 of the Laws of 1967 as having effected sufficiently substantial changes in the functions and powers of the corporation to treat the 1967 statute as an act of creation.
The court at Special Term seemed to have assumed in its opinion that the 1965 act of creation was valid. We agree with this assumption and find the act of 1967 in all important essentials equally valid.
The language of section 5 of article X originated in the recommendations of the Constitutional Convention of 1938 and it has an historic background beginning with the Constitutional Convention of 1846. In that year the Constitution was amended to provide that “ Corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes ” (Constitution of 1846, art. VIII, § 1; now art. X, § 1, in identical language).
This provision was designed to prevent the creation of private corporations by special acts which had been subject to abuse; and to allow for their formation by anyone in accordance with a general statute (Bishop & Attree, Report of the Debates and Proceedings of the Convention for the Revision of *634 the Constitution of the State of New York, pp. 221-222). For an early discussion of the policy underlying this provision, see Johnson v. Hudson Riv. R. R. Co. (49 N. Y. 455, 458).
The debates of the 1938 Convention indicate that the proliferation of public authorities after 1927 was the reason for the enactment of section 5 of article X (Revised Record, 1938 Convention, vol. 3, p. 2259). Abbott Low Moffat, who supported this proposal, told the convention that its purpose was “ to require the Legislature to pass directly itself upon the establishment of each new authority, and to prevent the enactment of general laws pursuant to which a municipal corporation can itself create a corporation of the authority type ” (op. cit., p. 2259).
Thus, the purpose was to prevent the Legislature from allowing the creation of public authorities in the manner in which, since 1846, it had been required to do with private corporations by a general statute, and require the Legislature itself to create them specifically by “ special act ”.
It becomes manifest from the convention discussion that what was intended to be accomplished was a requirement that the State Legislature itself create public corporations of the type described and that their creation not be left either to administrative officers or to local governments and that is what is meant by “ special act ” in this context. As Mr. Moffat explained to the convention, it was the purpose of the framers of the section to see to it that “ the power to create an authority shall not be delegated ’ ’ (Record, p. 2260).
The term ‘1 special act ’ ’ is not otherwise defined in this context by the Constitution. As it is used here it can only mean that a public corporation of this type must be created by a particular creative enactment of establishment by the Legislature. It cannot possibly mean that only one subject could be stated in the statute by which the corporation is created; or that in the statute creating the corporation the Legislature could not deal additionally with other matters, including the kinds of powers to be exercised or duties to be performed by the public corporation thus created.
Nothing illustrates better the continuing understanding of the Legislature and the Governor that section 5' of article X is to be construed in this sense than the Public Authorities Law as a statutory entity. The statute was first enacted immediately *635 following the 1938 'Convention (L. 1939, eh. 870) and for over 30 years has manifested a practical legislative construction of the Constitution.
This is the chapter of the Consolidated Laws where public authorities are created by the New York Legislature as specific entities under specific names with specific powers. It is the place where the Metropolitan Commuter Transportation Authority was created in 1965 (§ 1263) and it is the place where Niagara Frontier Transportation Authority was created and the Metropolitan Transportation Authority was created or continued in 1967.
The title of the Public Authorities Law makes clear its purpose to implement section 5 of article X of the Constitution. It is described in the title as an act to 1 ‘ compile in one chapter ’ ’ for the purpose of public convenience ‘1 the several acts ’ ’ in relation to public authorities ‘ ‘ created ” or “ validated ’ ’ by the Legislature.
In immediate response to the constitutional mandate, then, the 1939 act established a new chapter of the Consolidated Laws and re-enacted or validated the statutes which had created a large number of existing public authorities — substantially all those then extant.
It did not deal with one subject or one corporation but with a vast volume of statutory specifics providing differentially for diverse corporations. The 1939 statute occupies almost 200 pages of the Session Laws and repealed a large number of specified earlier enactments.
All new public authorities of the kind specified by section 5 of article X of the Constitution created by the Legislature have, in the 30 years since 1939, been created by specific name and specific enactment as amendatory additions to this chapter of the Consolidated Laws.
One notable example was the New York State Thruway Authority, created by chapter 143 of the Laws of 1950. The specific enactment of creation was by adding section 352 of the Public Authorities Law, i.e.: “ A board * * * is hereby created. Such board shall be a body corporate and politic ’ ’.
The statute dealt with a group of separate powers given to this corporation and with many local governments and places where powers granted and prescribed were to be exercised.
*636 There are now some 30 different public corporations created by the Legislature through amendments to the Public Authorities Law. (See N. Y. Legis. Manual, 1968, § IV.)
Typical of such statutes is chapter 1071 of the Laws of 1960 which, by amendment to section 725 of the Public Authorities Law, reconstituted and continued the Ogdensburg Bridge Authority as the Ogdensburg Bridge and Port Authority.
This statute not only vested specific additional new powers and functions in the corporation, for example the development of “ such facilities as it [the authority] may deem necessary ” within the City of Ogdensburg and certain towns (§§ 1377, 1379, subd. 22), but it also amended the general legislative act making appropriation for the support of government to meet the needs of the authority (§6).
It is reasonable, then, to hold that the Legislature created the Metropolitan Transportation Authority by a special act within the intention of section 5 of article X and that the incidental power to build a State bridge was relevant to its corporate function and well within the frame of legislative power.
From the historical background of the constitutional provision; from the explanation of its proponent in the 1938 Convention; from the initial construction of it by the Legislature in the following year by passing an act compiling in one chapter ‘ ‘ for the purpose of public convenience ’ ’ acts in relation to public authorities ‘1 created or validated by the legislature ’ ’; and from the consistent practice of the Legislature in this statutory field in the 30 years since 1939, it is manifest that the Metropolitan Transportation Authority was created by special act and that the implementation of its powers, including the right to build bridges, was a valid exercise of legislative authority.
Additional grounds of constitutional invalidity of section 92 of chapter 717 are asserted in the complaint of the city and of the intervening town. The city and town assert that section 92 is a “ local bill ”, embracing1 ‘ more than one subject ” within the prohibition of section 15 of article III of the 'Constitution.
The town additionally pleads that section 92 violates paragraph (2) of subdivision (b) of section 2 of article IX of the *637 Constitution which controls the enactment by the Legislature of statutes relating to “ property, affairs or government ” of any local government.
The court at Special Term did not pass on these objections to the 1967 statute, but the additional grounds of asserted unconstitutionality have been argued on the merits by the appellants, by the amicus curia, by the town and by the city conditionally on the merits. The court has concluded that these additional objections are properly before it and that they should be determined.
In effect, this result was forecast by the prior denial of respondents’ motion to dismiss the appeal to the extent it would have precluded a consideration of objections under articles III and IX (23 N Y 2d 1015).
But on broader grounds the separate ‘ ‘ causes of action ’ ’ based on different constitutional provisions are actually not different causes of action but different legal and constitutional arguments based on precisely the same factual allegations, both complaints seeking a declaration of invalidity on stated constitutional grounds on the same facts.
This kind of factual unity as a claimed basis for differing legal consequences does not usually authorize a segmented adjudication. (See De Coss v. Turner Blanchard, 267 N. Y. 207; Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304; Eidelberg v. Zellermayer, 5 A D 2d 658, 663.)
Considered on their merits, these additional constitutional objections to the statute are not well founded. Whatever else may be said about it, chapter 717 of the Laws of 1967, dealing broadly with State purposes and State policies, is not a ‘ ‘ local bill ” within section 15 of article III. Nor is it a law, within paragraph (2) of subdivision (b) of section 2 of article IX, in relation to the property, affairs or government of the Town of Oyster Bay.
Section 92, as it has been observed, authorizes a State corporation to build a State bridge; and section 93, amending section 341 of the Highway Law, describes where a State highway is to be located in the complaining town. This location of State highways has nothing whatever to do with the property, affairs or government of the Town of Oyster Bay.
*638 All State highways have to be located physically in some local subdivision; but their authorization remains a State and not a local matter. One might compare the laying out of the Thruway which was located in many enumerated towns, villages and cities without losing its essentially State character. Nor is there anything about the proposed State bridge, part of which would be in Oyster Bay, offensive to the Home Rule provision.
Numerous decisions deny this aspect of the construction of the statute which the city and town would invoke (Whalen v. Wagner, 4 N Y 2d 575; People ex rel. Buffalo & Fort Erie Bridge Auth. v. Davis, 277 N. Y. 292; Adler v. Deegan, 251 N. Y. 467; Admiral Realty Co. v. City of New York, 206 N. Y. 110; People v. O’Brien, 38 N. Y. 193).
It is suggested that concessions by counsel at Special Term require affirmance of the judgment. But no concession or admission in a pleading or affidavit by a public officer or his counsel on the validity of an act duly passed by the Legislature will bind the court to hold it unconstitutional (Fougera & Co. v. City of New York, 224 N. Y. 269, 278-279; National Bank of Colchester v. Murphy, 384 Ill. 61, 64; General Motors Corp. v. Blevins, 144 F. Supp. 381, 389; 16 Am. Jur. 2d, Constitutional Law, § 118, pp. 308-309; 16 C. J. S., Constitutional Law, § 97, pp. 344-345; Ann.—Stipulation as to Law, 92 A. L. R. 663, 667-668).
The answer denied the plaintiffs’ allegation (complaint, par. 24) that the 1967 statute was not a “ special act ” (answer, par. 1). Elsewhere, the answer (par. 7) alleges the 1967 statute was a “ general act ”, but this was in the context of the article III contention of plaintiffs. The answer also alleges that since the 1967 statute did not create the corporation it was unnecessary to have a “ special act ” (par. 17).
Counsel for defendants did not concede at Special Term the unconstitutionality of the 1967 statute. Their legal position was that the Metropolitan Transportation Authority was created by the statute of 1965 and merely continued in 1967. They conceded it was not a special act but argued that it was constitutional.
But that mistaken concession is not repeated in this court and all defendants correctly argue here that the 1967 statute is a special act which meets fully the article X, section 5, requirement that the Legislature itself shall create this kind of public authority.
*639 The judgment appealed from should be reversed and declaratory judgment directed for defendants-appellants against respondents and intervenor-respondent, without costs.