OPINION OF THE COURT
David Demarest, J.
This is a declaratory judgment action in which plaintiff, *544 Waste-Stream Inc. (WSI), moves for an order pursuant to CPLR 3211 (b) dismissing all affirmative defenses set forth in defendant’s (SWDA) answer for failure to state a defense and/or that they lack merit, for summary judgment pursuant to CPLR 3212 on the basis that there exists no triable issue of fact and for an order enjoining the defendant from engaging in any activity relating to the "collection” of solid waste. Defendant opposes the relief and, although failing to cross-move for summary judgment, requests judgment and dismissal of the complaint on the basis that summary judgment searches the record.
The facts are rather simple. In 1983 SWDA, a public benefit corporation, was created by the New York State Legislature[1] to establish a county-level centralized waste system to facilitate the development of integrated solid waste management. Until December 1994 plaintiff and defendant coexisted relatively peacefully — WSI collected the solid waste and, prior to the United States Supreme Court ruling local flow control laws[2] unconstitutional (C & A Carbone v Town of Clarkstown, 511 US —, 114 S Ct 1677 [May 16, 1994]), delivered the waste to SWDA’s facilities within St. Lawrence County which "receiv[ed], transported], processed], dispose[d] of, [sold], [stored], [conveyed], [recycled] and [dealt] with * * * solid waste and any products or by-products thereof’ (see, Public Authorities Law § 2048-e [4]). Following the Supreme Court’s decision there was a significant decline in the waste tonnage delivered to SW-DA’s facilities,[3] and a concomitant decline in revenue, causing SWDA to experience a deterioration in its financial health. In an effort to meet these shortfalls SWDA was required to utilize a portion of reserves set aside for retirement of its bonds. SWDA expects to utilize $1 million of reserve principal and interest to meet operating costs this calendar year (1995); thereafter, if unable to meet its operating costs, St. Lawrence County must make up the shortfall.
In an effort to financially right itself SWDA reduced its tipping fee and streamlined its operations by terminating employees, minimizing recycling costs, and discontinuing or postpon *545 ing public education and hazardous waste programs. It also began to acquire equipment and solicit accounts for the pick up of waste at generation sites for transport to its own facilities for disposal. SWDA’s entrance into the waste collection business, in direct competition with WSI, caused WSI’s counsel to make inquiry into the powers granted SWDA by the Legislature. Based upon that review, WSI commenced this declaratory action to challenge SWDA’s collection of waste from commercial and institutional generators within St. Lawrence County, alleging that such activities are outside its statutory powers.
SWDA joined issue and asserted four affirmative defenses: complaint fails to state a cause of action; WSI’s claims are barred by the Statute of Limitations; WSI lacks standing to assert its claims; WSI’s claims are barred by laches.
DOES THE COMPLAINT STATE A CAUSE OF ACTION?
The Public Authorities Law has established three separate categories into which fall 18 different public benefit corporations dealing with solid waste.[4] Being that SWDA is one of only two existing Solid Waste Disposal Authorities,[5] the other being established in 1969 in Onondaga County[6] —the oldest of the 18 facilities, there is not much which can be gleaned without resorting to studying the statutory language empowering the 10 Management Authorities[7] and 6 Resource Recovery Agencies.[8] Interestingly, the Management Authorities established after 1980 each have statutory language unique to all Management Authorities and Resource Recovery Agencies have language unique to that classification.
Peculiar to most Resource Recovery Agencies is the power "To collect, receive, transport, process, dispose of, sell, store, *546 convey, recycle, and deal with, in any lawful manner and way, solid waste and any products or by-products” (see, e.g., Public Authorities Law § 2047-e [5]; emphasis added). Compare the language establishing both Disposal Authorities: "To receive, transport, process, dispose of, sell, store, convey, recycle and deal with, in any lawful manner and way, solid waste and any products or by-products” (Public Authorities Law § 2048-e [4]). Noticeably missing is the term "collect”. Likewise, Management Authorities have the power "To collect [or] receive from the United States, the state * * * [the town,] any other municipality or public corporation or person solid waste” (Public Authorities Law § 2051-e [8]; emphasis added).
In the instance of Islip Resource Recovery Agency (Islip) when a question arose as to whether the then-existing language authorized the Authority to "collect” waste, a legislative amendment was sought and passed. Prior to the 1989 amendment to the Islip "powers” section, its facility was defined as being "used, occupied or employed beyond the initial solid waste collection process” and its powers were "[t]o receive, transport, process, dispose of, sell, store, convey, recycle and deal with, in any lawful manner and way, solid waste and byproducts” (Public Authorities Law § 2046-b [13]; former § 2046-f [4] [L 1982, ch 632]). Note, however, the Legislature amended the "powers” section without amending the definition of "solid waste management-resource recovery facility” or "facility” section so that the definition of the facility still limits its operations to activities beyond the initial recovery process. In any event, the amendment certainly empowered Islip to "collect” solid waste. (L 1989, ch 159, § 1.)
The Onondaga Resource Recovery Agency is an anomaly in that it is the only Resource Recovery Agency not granted the power to "collect” and its definition of facility restricts its activities to those "beyond the initial collection process”. Neither party has argued this as instructive; but this legislative creature is somewhat of a conundrum vis-a-vis Onondaga’s previously enacted Disposal Authority. In any event, the court is persuaded that the classifications (Resource Recovery Agency, Management Authority and Disposal Authority) are distinctive in name only, and not, in any way, determinative of powers, since an agency or authority can possess only such powers as are enumerated within its title of the Public Authorities Law.
The 1989 Islip amendment respecting the Legislature’s addition of "collect” to its powers is persuasive in this case. It is *547 obvious that when Islip, a product of legislative enactment, was confronted with the possibility of an ambiguity respecting its power to "collect” solid waste it sought legislative intervention to clearly state its authority. The fact that the Legislature saw the need to add the word "collect” alongside its other powers is indicative that it previously lacked such power.
Public authorities are created by statute and their powers are necessarily limited to those granted it by the Legislature. Principles of statutory construction and interpretation prohibit courts from correcting errors, omissions, or defects in State legislation. Further, "[a] court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended to intentionally omit; and the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 74; see, Town of Hoosick v Eastern Rensselaer County Solid Waste Mgt. Auth., 153 Misc 2d 896, affd as mod in part, revd in part 182 AD2d 37 [3d Dept 1992]; see also, City of Rye v Metropolitan Transp. Auth., 24 NY2d 627 [1969].)
The absence of language that specifically provides for or prohibits the "collecting” of waste along with a definitional section specifying that SWDA’s facility is one "used, occupied or employed beyond the initial solid waste collection process for the receiving, transporting, storage, processing, or disposal of solid waste” (all emphases added) (Public Authorities Law § 2048-b [14]) and a review of the definitional and powers sections of the other solid waste public benefit corporations provides convincing evidence that the absence of the term "collect” as a power granted to SWDA was intentional, and neither an oversight nor considered redundant verbiage for the granted power to "receive”. (See, e.g., Matter of Alonzo M. v New York City Dept. of Probation, 72 NY2d 662 [1988]; Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669 [1988]; Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205 [1976]; McKinney’s Cons Laws of NY, Book 1, Statutes § 363.)
DECLARATORY JUDGMENT AS PROPER FORM
Questions as to construction of a statute may be entertained in declaratory judgment proceedings commenced in Supreme Court provided there is an actual or justiciable controversy to be determined, and are particularly appropriate to determine questions as to the interpretation of statutes and *548 any rights or entitlements which may flow therefrom. (Matter of Constantine v White, 166 AD2d 59 [3d Dept 1991]; Brown v Daytop Vil., 161 Misc 2d 248 [Sup Ct, Bronx County 1994]; Conrad v Regan, 155 AD2d 931 [4th Dept 1989].) This is reflective of the instant case and, accordingly, petitioners are not barred by the four-month Statute of Limitations respecting CPLR article 78 special proceedings.
SWDA HAS THE POWER TO BE SUED
Public Authorities Law § 2048-e (1) (tit 13-E) is very clear that included in SWDA’s powers is the ability to sue and he sued. In fact, defendant’s papers do not really contest this.
WSI HAS STANDING TO SUE
Again, defendant does not seriously contend plaintiff lacks standing to sue in this action, and based on the interests asserted and sought to be protected, the court finds WSI has standing to bring this declaratory judgment action. (See, Matter of Goldberg v Axelrod, 104 AD2d 520 [3d Dept 1984], lv denied 64 NY2d 602 [1984]; Matter of Dairylea Coop. v Walkley, 38 NY2d 6 [1975]; Public Authorities Law § 2048-e [1].)
LACHES
The defense of laches is unavailable in this case. Defendant has failed to demonstrate the "delay” occasioned by plaintiff once it learned of SWDA’s purportedly ultra vires "collection” activities. Plaintiff has presented an affidavit which affirms that once its counsel discovered SWDA’s actions might be without legislative authority to collect waste, this action was immediately commenced. Although defendant urges it would suffer prejudice from the delay by virtue of its capital investment in equipment, this type of prejudice is of no moment because the investment, necessarily, had to have been made to engage in "collection activities”. It was only when defendant was able to, and did, engage in these activities that the plaintiff was aggrieved and had standing to commence this declaratory judgment action.
It is, therefore, the decision of this court, and it is hereby ordered that plaintiffs summary judgment motion is, in all respects, granted dismissing defendant’s affirmative defenses and defendant is hereby enjoined from engaging in the "collection” of solid waste or its by-products.

. (L 1983, ch 502 [eff July 19, 1983], Public Authorities Law, art 8, tit 13-E, § 2048-a, "St. Lawrence County Solid Waste Disposal Authority Act”.)

. The local law required all solid waste generated or originating within the county to be delivered to St. Lawrence County Solid Waste Disposal Authority facilities.

. Private haulers began delivering waste to facilities outside St. Lawrence County, among others, Franklin County landfill and Seneca Meadows landfill in Western New York.

. Solid Waste Disposal Authorities (2); Solid Waste Management Authorities (10); Resource Recovery Agencies (6).

. SWDA is the only Disposal Authority created post-1980.

. In 1981 the Legislature established the Onondaga County Resource Recovery Agency. (See, Public Authorities Law, tit 13-B, §§ 2045-a — 2045-x.) Previously, the Onondaga County Solid Waste Disposal Authority was established by Public Authorities Law, title 13, §§ 2015-2037.

. Public Authorities Law §§ 2040-a — 2040-u (Multi-Town), 2041 — 2041-x (Montgomery-Otsego et al.), 2049-a — 2049-x (North Hempstead), 2049-aa— 2049-yy (Oneida-Herkimer), 2050-aa — 2050-yy (Eastern Rensselaer), 2051-a— 2051-x (Franklin); tit 13-K, §§ 2051-a — 2051-x (Essex), 2052-a — 2052-y (Greater Troy), 2053-a — 2053-z (Rockland), 2725-2749 (Western Finger Lakes).

. Public Authorities Law §§ 2045-a — 2045-x (Onondaga), 2046-a — 2046-u (Islip), 2047-a — 2047-x (Dutchess), 2047-a — 2047-x (Broome), 2050-a — 2050-z (Ulster), 2051-a — 2051-y (Brookhaven).