[662 NYS2d 516]

COUNCIL OF THE CITY OF NEW YORK et al., Respondents, v RUDOLPH W. GIULIANI, as Mayor of the City of New York, et al., Appellants.

Second Department, September 8, 1997

## APPEARANCES OF COUNSEL

*Paul A. Crotty, Corporation Counsel* of New York City *(Jeffrey D. Friedlander, David Karnovsky, Daniel Turbow* and *Elizabeth Dvorkin* of counsel), for appellants.

*Tenzer Greenblatt, L. L. P.,* New York City *(Edward L. Sadowsky, Ira A. Finkelstein* and *Gail R. Zweig* of counsel), and *Richard M. Weinberg,* New York City, for respondents. (One brief filed.)

## OPINION OF THE COURT

Per Curiam.

On November 8, 1996, the Board of Directors of the New York City Health and Hospitals Corporation (hereinafter HHC) approved a sublease of Coney Island Hospital (hereinafter CIH) to a for-profit entity, Primary Health Systems New York, Inc. (hereinafter PHS-NY), for an initial period of 99 years with an option to renew for an additional 99 years. CIH serves a population of about 750,000 in South Brooklyn. Pursuant to the terms of the sublease, PHS-NY agreed to operate CIH as a community-based, acute-care inpatient hospital and to provide substantially the same medical services currently provided by HHC. The sublease further provided that the City and HHC would enter into a separate agreement with PHS-NY in which they would agree not to compete with PHS-NY by operating a hospital within the "catchment area" of CIH.

The sublease was part of a plan announced in 1994 by New York City Mayor Rudolph W. Giuliani to privatize the hospitals operated by HHC. Through the City's Economic Development Corporation, offering memoranda were issued in 1995 for three targeted HHC hospitals (CIH, Queens Hospital Center, and Elmhurst Hospital Center in Queens) which proposed a

transfer of the facilities and their services to private entities through long-term subleases. In an effort to obtain broader public review of the privatization plan, the City Council commenced this declaratory judgment action in March 1996 against, *inter alia,* the Mayor and HHC. The City Council alleged, *inter alia,* that the privatization of the target hospitals by means of subleases with private institutions required City Council approval and was subject to the Uniform Land Use Review Procedure ([hereinafter ULURP] NY City Charter § 197-c). A second declaratory judgment action, which raised essentially the same issues, was commenced in May 1996 by two unincorporated associations whose members live and work in the communities served by CIH and the targeted hospitals in Queens *(see, Campaign to Save Our Pub. Hosps.-Queens Coalition v Giuliani,* — AD2d —, 1997 NY Slip Op — [decided herewith]). The parties cross-moved for summary judgment, and the Supreme Court, Queens County, directed that the actions be jointly tried.

While the parties' motions and cross motions for summary judgment were pending, the HHC Board of Directors approved the CIH sublease. The plaintiffs in both actions amended their complaints to allege that the sublease of CIH constituted an ultra vires act, and the motion papers were amended to address this issue. The Supreme Court granted summary judgment to the plaintiffs herein to the extent of declaring that the subleasing of HHC facilities was subject to ULURP, that such subleasing required the approval of the Mayor and the City Council, and that HHC did not have statutory authority to sublease CIH. We agree with the Supreme Court that the CIH sublease, which transfers responsibility for the operation of the hospital and the provision of medical services, is not authorized by HHC's governing statute.

HHC was established as a public benefit corporation by the State Legislature in 1969 *(see,* McKinney's Uncons Laws of NY § 7381 *et seq.* [New York City Health and Hospitals Corporation Act (hereinafter NYCHHCA); L 1969, ch 1016, as amended]). Resolution of the issue of whether HHC has the authority to privatize its hospital facilities begins with the language of the enabling statute *(see, Giuliani v Hevesi,* 90 NY2d 27). In interpreting the statute, " 'the spirit and purpose of the act and the objects to be accomplished must be considered. *The legislative intent is the great and controlling principle' " (Ferres v City of New Rochelle,* 68 NY2d 446, 451, quoting *People v Ryan,* 274 NY 149, 152).

The Legislature's intent in creating HHC can readily be discerned from the statute's lengthy "Declaration of policy and statement of purposes" (McKinney's Uncons Laws of NY § 7382 [NYCHHCA § 2]). The Legislature declared that the provision of health care and the operation of the City's health facilities were of "vital and paramount concern" (McKinney's Uncons Laws of NY § 7382). Upon finding that the City's health facilities were inadequate and that the administrative system then in place obstructed and impaired the "efficient operation of health and medical resources", the Legislature concluded that a system was required which would permit flexibility in the provision of health care, "particularly to those who can least afford such services" (McKinney's Uncons Laws of NY § 7382). The Legislature stated: "It is found, declared and determined that in order to accomplish the purposes herein recited, to provide the needed health and medical services and health facilities, a public benefit corporation * * * should be created to provide such health and medical services and health facilities and to otherwise carry out such purposes * * * and that the exercise by such corporation of the functions, powers and duties as hereinafter provided constitutes the performance of an essential public and governmental function" (McKinney's Uncons Laws of NY § 7382).

The statute required HHC and the City to enter into an agreement by July 1, 1970, "whereby the corporation *shall operate* the hospitals then being operated by the city for the treatment of acute and chronic diseases" (McKinney's Uncons Laws of NY § 7386 [1] [a] [NYCHHCA § 6 (1) (a)]; emphasis added). CIH was among the hospitals that the City leased to HHC for an annual rent of $1 "for its corporate purposes, for so long as it [HHC] shall be in existence" (McKinney's Uncons Laws of NY § 7387 [1] [NYCHHCA § 7 (1)]). The Legislature clearly contemplated that the municipal hospitals would remain a governmental responsibility and would be operated by HHC as long as HHC remained in existence.

The defendants contend, however, that HHC's corporate purpose of providing quality medical care to the CIH community can best be accomplished through the sublease with PHS-NY and that the statute explicitly authorizes HHC to sublease a hospital to a private entity. The defendants rely upon that portion of the statute which gives HHC the power: "To * * * dispose of by sale, lease or sublease, real or personal property, including but not limited to a health facility, or any interest therein for its corporate purposes; provided, however,

that no health facility or other real property acquired or constructed by the corporation shall be sold, leased or otherwise transferred by the corporation without public hearing by the corporation after twenty days public notice and without the consent of the board of estimate of the city" (McKinney's Uncons Laws of NY § 7385 [6] [NYCHHCA § 5 (6)]).

We disagree with the defendants' contention that this provision, which permits HHC to dispose of a health facility, also authorizes it to "sublease" its responsibility to provide medical services. The words of a statute should not be read in isolation to reach a construction which is contrary to the over-all statutory purpose and scheme. Rather, a statute should be construed as a whole and all parts read together to determine the legislative intent *(see, Matter of Long v Adirondack Park Agency,* 76 NY2d 416, 420; McKinney's Cons Laws of NY, Book 1, Statutes § 97). The purpose and intent of the NYCHHCA was to establish one entity accountable to the public to operate the municipal hospitals for the benefit of the public. A construction of section 5 (6) of the NYCHHCA (McKinney's Uncons Laws of NY § 7385 [6]) which would permit the defendants to turn over the *operation* of an entire hospital to a private entity by means of a 99-year sublease would be inconsistent with that intent and purpose.

The defendants' reliance on NYCHHCA § 5 (8) (McKinney's Uncons Laws of NY § 7385 [8]) is also misplaced. That section states that HHC has the power: "To provide health and medical services for the public directly or by agreement or lease with any person, firm or private or public corporation or association, through and in the health facilities of the corporation and to make rules and regulations governing admissions and health and medical services" (McKinney's Uncons Laws of NY § 7385 [8]). While HHC has the authority to contract with private entities to provide medical services, such authority is limited by the phrase "through and in the health facilities of the corporation." *(Ibid.)* NYCHHCA § 5 (8) (McKinney's Uncons Laws of NY § 7385 (8) does not authorize HHC to transfer its statutory obligation to operate a City hospital to a private entity.

Although the issue of HHC's authority to sublease CIH can be resolved on the basis of the statutory language alone, the legislative history is instructive. A report by the New York State Department of Health in May 1969, following investigatory hearings on the City's hospital system, recommended creation of a public benefit corporation as a means of operating

the municipal hospital system with more administrative autonomy while retaining accountability to municipal officials (Report of Hearing Officer, NY State Dept of Health, May 15, 1969, Bill Jacket, L 1969, ch 1016). Former Governor Nelson Rockefeller, in his memorandum approving the legislation, stated that the HHC was established to "operate and maintain" the City's municipal hospitals and that the provision of adequate health facilities "is a major responsibility of government" (Governor's Mem approving L 1969, ch 1016, 1969 McKinney's Session Laws of NY, at 2569).

There is no indication that the Legislature intended that HHC, upon being given the authority to operate City hospitals, could then transfer such authority to a private entity. In a letter to Governor Rockefeller, former New York City Mayor John Lindsay, who proposed the HHC legislation, stated that, by establishing a public benefit corporation, the City was "not getting out of the hospital business". (Letter dated May 8, 1969, Bill Jacket, L 1969, ch 1016.) The public benefit corporation was viewed as a means of better managing the City's entire health system, and the Mayor stated that the "health care system will continue to be the City's responsibility" *(ibid.)*.

Based on the statutory language, together with the legislative history, we conclude that HHC exceeded its statutory authority when it agreed to sublease CIH to PHS-NY. The defendants may be correct that the sublease of CIH is the only viable means of ensuring that quality medical services are provided to the community in the future and that necessary capital improvements are made to the hospital. It is not the function of this Court to consider the merits of privatization of HHC-operated hospitals. The defendants' remedy is to apply to the Legislature to amend the statute to confer such authority upon HHC, as only the Legislature has the authority to create, modify, or dissolve a public benefit corporation *(see, City of Rye v Metropolitan Transp. Auth.,* 24 NY2d 627, 634; *Town of Hoosick v Eastern Rensselaer County Solid Waste Mgt. Auth.,* 182 AD2d 37; NY Const, art X, § 5).

In view of the Supreme Court's determination that the sublease of CIH constitutes an ultra vires act to the extent the sublease absolves the HHC from any responsibility for the day-to-day administration or operation of CIH, it should have dismissed the demands for declaratory relief on the remaining issues raised by the parties with respect to whether the provisions of ULURP apply to the sublease and whether City Council approval of the sublease is required *(see, New York*

*Pub. Interest Research Group v Carey,* 42 NY2d 527, 529-530; *Carlisle v Spatola,* 232 AD2d 444).

O'BRIEN, J. P., SULLIVAN, GOLDSTEIN and LUCIANO JJ., concur.

Ordered that the order and judgment is modified, on the law, by deleting the provisions thereof which declare (1) that any sublease of a facility of the New York City Health and Hospitals Corporation requires the approval of the Mayor and the City Council of the City of New York and (2) that any sublease of a facility of the New York City Health and Hospitals Corporation is subject to the Uniform Land Use Review Procedure, and substituting therefor a provision dismissing the causes of action which sought those declarations; as so modified the order and judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for a determination of those branches of the plaintiffs' motion which were for summary judgment as to demands D and E of the second amended complaint.